MICHAEL L. TRACY, ESQ., SBN 237779
MTRACY@MICHAELTRACYLAW.COM
MEGAN ROSS HUTCHINS, ESQ., SBN 227776
MHUTCHINS@MICHAELTRACYLAW.COM
LAW OFFICES OF MICHAEL TRACY
2030 Main Street, Suite 1300
Irvine, CA 92614
T: (949) 260-9171
F: (866) 365-3051

Attorneys for Plaintiff DIANE ADOMA

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| DIANE ADOMA, *et al.*<br><br>Plaintiffs,<br><br>vs.<br><br>THE UNIVERSITY OF PHOENIX, INC. , *et al.*,<br><br>Defendants. | Case No.: 2:10-cv-00059-LKK-GGH<br><br>**NOTICE OF MOTION AND MOTION FOR COLLECTIVE ACTION CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: May 24, 2010 10:00 AM<br>Judge: Hon. Lawrence K. Karlton<br>Depart: 4<br><br>Date Filed: January 8, 2010<br>Trial Date: NONE SET |

**TO DEFENDANT THE UNIVERSITY OF PHOENIX, INC. AND DEFENDANT APOLLO GROUP, INC. AND THEIR ATTORNEY OF RECORD:**

**PLEASE TAKE NOTICE** that on May 24, 2010 at 10:00 AM, or as soon thereafter as counsel may be heard in Department 4 of the above-entitled Court, Plaintiff DIANE ADOMA will and hereby does move this Court for an order (1) for conditional certification of a Fair Labor Standards Act collective action for all hourly employees who work as Enrollment Counselors within the State of California during the last three years, (2) that Plaintiff's attorney shall provide court-supervised notice, with a 120 day opt-in period to all potential collective action members, and (3) that Defendant shall provide the names and last known addresses for all collective action members.

This motion is based upon this Notice of Motion, the accompanying Motion, the accompanying Memorandum of Points and Authorities, the papers and records on file with this Court, and other such oral and documentary evidence as may be presented to the Court at or prior to the hearing on the Motion.

DATED: April 3, 2010

LAW OFFICES OF MICHAEL TRACY

By: /s/ Michael Tracy

MICHAEL TRACY, Attorney for Plaintiff DIANE ADOMA

## Table of Contents

**A. INTRODUCTION** ..... 1

**B. Factual Background** ..... 2

**C. ARGUMENT** ..... 3

**1. Collective action certification is appropriate because there are a large number of employees who were subjected to the same illegal pay policy.** ..... 3

**2. The damages in this case can be proven from computer records and will not require an individualized analysis as to why each employee worked overtime.** ..... 4

**3. The employees received educational benefits as part of a companywide policy and the value of these benefits was not included in the regular rate of pay as is required by the FLSA.** ..... 5

**4. Damages can easily be computed using nothing more than the existing payroll records for the employees** ..... 6

**D. CONCLUSION** ..... 6

**TABLE OF AUTHORITIES**

Page(s)

FEDERAL CASES

*Castle v. Wells Fargo Fin., Inc.*
2008 U.S. Dist. LEXIS 106703. (N.D. Cal. Feb. 20, 2008) ....................................4

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. Cal. 1998)....................................4, 6

*Hoffmann-La Roche v. Sperling*
493 U.S. 165 (U.S. 1989) ....................................4

*Kress v. PricewaterhouseCoopers, LLP*
2009 U.S. Dist. LEXIS 117949 (E.D. Cal. Nov. 25, 2009)....................................3, 4

*McElmurry v. U.S. Bank Nat'l Ass'n*
495 F.3d 1136 (9th Cir. Or. 2007)....................................3

*Thiessen v. GE Capital Corp.*
267 F.3d 1095 (10th Cir. Kan. 2001)....................................3

*Velasquez v. HSBC Fin. Corp.*
2010 U.S. Dist. LEXIS 21311 (N.D. Cal. Feb. 18, 2010) ....................................3

FEDERAL STATUTES

29 U.S.C. 207(e) ....................................5

29 U.S.C. § 216....................................3

OTHER AUTHORITIES

29 C.F.R. § 778.209....................................5

29 C.F.R. § 778.330....................................5

Rule 23....................................3

**MEMORANDUM OF POINTS AND AUTHORITIES**

## A. INTRODUCTION

Plaintiff Diana Adoma worked for University of Phoenix ("UOP") as an Enrollment Counselor. In this role, she would assist prospective students with the enrollment process and advise them on things such as which classes had prerequisites, what the degree requirements were, and various other items relating to enrolling.

Although UOP properly classified Ms. Adoma and the other collective action members as nonexempt employees and paid them by the hour, the issue for this collective action is that UOP had a system that resulted in employees deliberately being underpaid for overtime hours worked. There is no question that the collective action members were paid overtime when it was reported in the payroll system. The issue is that UOP had an insidious system that resulted in massive underpayments of overtime to the employees.

In particular, UOP used a type of "dual bookkeeping" system for its time clocks. It used one system to actually track the work time of the employees and a completely separate system to track the hours that were paid for. Not surprisingly, the hours paid were frequently far less than the number of hours worked.

However, it is the first system, the one that tracked the actual work done by the employees, which also gives the employees hope to actually be paid for their work. That first system was a telephone system that would route incoming calls to the employees. That is, perspective students would call into a call center and be routed to the next available enrollment counselor who would assist them in enrolling in classes. As UOP only makes money when students are enrolled, this system worked like clockwork. In particular, the phone system would track when each employee was at his or her desk, when they were on the phone, how long each call lasted, etc. The reason for all this is simple - UOP did not want to route calls to desks where employees were not present. Thus, even if an employee just got up to get a drink of water or use the restroom, they would have to mark themselves as "away" in the phone system so that calls would not be routed to them. If a manager noticed an employee away from their desk and not marked as "away" in the phone system,

the employee could be disciplined. Likewise, if the system routed a call to an employee and the employee was not there to answer it, the employee could be disciplined. The end result is that this phone system contains detailed and exact records of every minute that these employees spent working.

In stark contrast, there was the system the employees were paid out of. For this system, the employees had to manually enter any overtime into the system. If they were too busy or simply forgot, then they didn't get paid for it. In addition, the system was frequently broken or too slow, and the employees would simply skip entering overtime for that day. Ultimately, there are a myriad of reasons why employees did not enter the proper amount of time worked into the system. However, the results were universally the same -- the employees were underpaid for the hours that they worked.

Given that the policy of maintaining two separate systems was utilized throughout California and the employees all underreported their time, a collective action is necessary so that all employees are able to be paid the difference between what they worked and what they were paid.

## B. Factual Background

There are at least 380 Enrollment Counselors working for the University of Phoenix currently. (Decl. Harper ¶2-3, Document #9, Filed 3/4/2010). The employees work in at least 26 different locations throughout California. (Decl. Harper ¶2-3). The Enrollment Counselors are hourly nonexempt employees who are paid for overtime that is entered into the payroll system. (Decl. Adoma ¶8).

All of these employees work at call centers where incoming calls are routed to the Enrollment Counselors by a computerized phone system. (Decl. Adoma ¶2). The computerized phone system is standardized across the offices. (Decl. Adoma ¶3). In addition to the computerized phone system, UOP utilizes an online time tracking system for payroll. (Decl. Adoma ¶4). The payroll system is also standardized across the offices. (Decl. Adoma ¶3). The payroll system was frequently slow or broken and employees could not enter their overtime. (Decl. Adoma ¶5). Other times, employees would simply forget to enter it. (Decl. Adoma ¶5). In addition, UOP had a policy

that only 1/2 hour increments could be entered into the payroll system for overtime. (Decl. Adoma ¶6). That is, the employees were told to round-down their overtime to the nearest half-hour. (Decl. Adoma ¶6). UOP could access the phone system records to determine how many hours an employee worked on a given day. (Decl. Adoma ¶7). Employees were only paid overtime based on the number of hours entered into the payroll system and not how many hours were reflected as worked in the phone system. (Decl. Adoma ¶4). In addition to Ms. Adoma, an additional plaintiff, Michelle Abbaszadeh confirms that the above practice was indeed used at other offices. (Decl. Abbaszadeh ¶3-5).

## C. ARGUMENT

### 1. Collective action certification is appropriate because there are a large number of employees who were subjected to the same illegal pay policy.

"A 'collective action' differs from a class action." *McElmurry v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1139 (9th Cir. Or. 2007). Unlike a Rule 23 class action, a collective action brought under 29 U.S.C. § 216 requires that each plaintiff "opt in" to the lawsuit by giving consent in writing. *Id*. Given that non-parties are not bound by the results of a collective action, the certification process is not designed to ensure due process is being provided to unnamed parties, and is instead about the district court managing the action in an orderly fashion. *Id*.

In managing a collective action, the typical procedure in the Ninth Circuit is to follow a "two-tier" approach. *Kress v. PricewaterhouseCoopers, LLP*, 2009 U.S. Dist. LEXIS 117949, 9 (E.D. Cal. Nov. 25, 2009). See Also, *Velasquez v. HSBC Fin. Corp.*, 2010 U.S. Dist. LEXIS 21311 (N.D. Cal. Feb. 18, 2010). Under this approach, the first tier is used to send notice to "similarly situated" individuals. *Id*. In determining whether individuals are "similarly situated" for purposes of a collective action, the Court "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" *Id*. quoting *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. Kan. 2001). The standard is "fairly lenient," and typically results in certification. *Id*.

Once the initial certification is conducted and plaintiffs are given a chance to opt-in and additional discovery is conducted, the Court then revisits the certification using a slightly stricter standard. *Kress* at 13. The stricter standard looks at (1) whether disparate factual and employment settings exist, (2) individualized defenses, and (3) fairness and procedural considerations. *Id*.

Here, there are hundreds of employees who utilized the "dual bookkeeping" system for time tracking. They are all victims of this same policy. While it certainly is true that each employee will have individualized damages, this does not defeat collective action certification. The "existence of shared legal issues with divergent factual predicates is sufficient [for certification], as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. Cal. 1998).

This case has the quintessential "core of salient facts." Namely, all the putative collective action members used one system to track their actual hours worked and a separate system to pay for those hours. These systems were used throughout California. (Decl. Adoma ¶3 and 6). As such, there is significant evidence of a common scheme to underpay the employees such that a collective action is appropriate.

**2. The damages in this case can be proven from computer records and will not require an individualized analysis as to why each employee worked overtime.**

Some courts have refused to certify "off-the-clock" claims where a highly individualized inquiry was necessary as to why each employee worked off-the-clock. *Castle v. Wells Fargo Fin., Inc.*, 2008 U.S. Dist. LEXIS 106703, 14. (N.D. Cal. Feb. 20, 2008). However, that was because it would simply be impossible to determine what the damages were on a class wide basis. Ultimately, collective action certification is a method of judicial economy wherein the trial court has discretion to determine whether or not proceeding on a collective basis is the most efficient path. *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (U.S. 1989). Here, the trial will amount to little more than comparing the time recorded by the phone system to the time recorded in the payroll system and paying the employees the difference. This does not require that any inquiry be made into why the employee did not enter the time into the payroll system. Indeed, the reasons are entirely irrelevant.

Given that there is no need for any individualized analysis, this case will be best litigated as a collective action.

**3. The employees received educational benefits as part of a companywide policy and the value of these benefits was not included in the regular rate of pay as is required by the FLSA.**

The University of Phoenix offers its employee an Education Tuition Program. (Decl. Abbaszadeh ¶7). This program allows employees of the University of Phoenix to enroll in classes at the University free of charge, paying only a small "resource fee". (Decl. Abbaszadeh ¶7). These classes at the University would normally cost the employee money to attend, but were provided as compensation for employment. (Decl. Abbaszadeh ¶8). The value of the educational benefits was not included in computing the employee's regular-rate-of-pay for purposes of overtime. (Decl. Abbaszadeh ¶9).

The FLSA requires that "all remuneration" be included in the computation of the regular-rate-of pay, except for the narrow exclusions specifically listed. 29 U.S.C. 207(e). The exclusions are for (1) small gifts, (2) vacation and holiday pay, (3) discretionary bonuses, (4) pension fund contributions, (5) overtime payments, (6) weekend work, provided it is one and one-half the normal rate, and (7) premium rate for work outside normal hours, provided it is one and one-half the normal rate. Id. What is specifically not excluded is non-cash payments. In fact, the FLSA specifically requires that "[a]ll compensation (except statutory exclusions) paid by or on behalf of an employer to an employee as remuneration for employment must be included in the regular rate, **whether paid in the form of cash or otherwise.**" 29 C.F.R. § 778.330 (emphasis added). As such, it is clear that non-cash remuneration provided to an employee must be included in the regular-rate-of-pay.

The employees were entitled to have this remuneration calculated into their regular-rate-of-pay for the entire period during which they earned the remuneration. For example, if an employee receives a quarterly bonus, then the bonus affects the regular-rate-of-pay for the entire quarter over which it was earned, and the employer must then pay additional overtime compensation to the employee for any overtime worked during the quarter. 29 C.F.R. § 778.209. Here, the employees

would be entitled to have the educational bonus computed over the entire time they were enrolled in the school. The damages could easily be computed by prorating the dollar value of the benefit over the weeks in which the employee was enrolled.

### 4. Damages can easily be computed using nothing more than the existing payroll records for the employees

As noted above, the common legal issue of whether or not the tuition benefits need to be included in the regular-rate-of-pay is going to be the main issue in the case. Of course, the purpose of class certification is not to determine the ultimate merits of the case, but only to ascertain whether those merits can be best addressed on a class wide basis. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. Cal. 1998).

Once the issue of whether the tuition benefits paid to the employees needs to be included in the regular-rate or not is decided, the damages can easily be computed by a computer system. That only information that is needed is which employees took classes, the value of those classes, and the amount of overtime that they worked during the time they were enrolled in the classes. All of this information would be readily available by Defendant in their existing computer systems. At that point, it would simply be a matter of feeding the data into the computer to determine damages.

## D. CONCLUSION

Defendants utilize a "dual bookkeeping system" for time tracking. The phone system keeps detailed records of exactly when employees are working at their desk. Rather than simply import this information into the payroll system, Defendants require employees to manually enter overtime into a dilapidated system that frequently does not work. The end result is that employees are underpaid for their time. In addition, even if Defendants prove that not a single employee worked "off-the-clock," collective action certification is appropriate so that damages can be assessed for Defendants' companywide policy of not including educational benefits in the regular rate of pay.

As such, Plaintiffs respectfully request an order (1) for conditional certification of a Fair Labor Standards Act collective action for all hourly employees who work as Enrollment Counselors within the State of California during the last three years, (2) that Plaintiff's attorney shall provide court-supervised notice, with a 120 day opt-in period to all potential collective action

members, and (3) that Defendant shall provide the names and last known addresses for all collective action members.

DATED: April 12, 2010

LAW OFFICES OF MICHAEL TRACY

/s/ Michael Tracy

By: ______________________________

MICHAEL TRACY, Attorney for Plaintiff DIANE ADOMA

-7-

MOTION FOR COLLECTIVE ACTION CERTIFICATION