1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DIANE ADOMA,

11                                      NO. CIV. S-10-0059 LKK/GGH
             Plaintiff,
12
          v.
13                                      O R D E R
     THE UNIVERSITY OF PHOENIX,
14   INC., et al.,

15
             Defendants.
16   _____/

17        Plaintiff in this suit brings various claims for unpaid

18   overtime wages against the University of Phoenix and Apollo Group,

19   Inc., on behalf of herself and others similarly situated.

20   Plaintiff's suit articulates four different theories of recovery:

21   (1) a class action complaint brought under Federal Rule of Civil

22   Procedure 23(a),(b)(1), and (b)(3) alleging various violations of

23   the California Labor Code; (2) a collective action complaint under

24   the Fair Labor Standards Act ("FLSA"); (3) an individual action for

25   retaliation and record production; and (4) a Private Attorney

26   General Act claim for violations of the California Labor Code.

                                    1

1    Defendants argue that they face similar unpaid overtime suits
2  in the Eastern District of Pennsylvania and Central District of
3  California. During the hearing on this motion, however, defendants
4  represented that the allegedly similar suit in the Central District
5  of California has reached a settlement awaiting court approval.
6  Defendants here move to dismiss the FLSA claim under the
7  first-to-file rule, or in the alternative, to stay and/or transfer
8  the claim to the Central District of California. Defendants also
9  move to stay plaintiff's state law claims and to transfer this case
10  to the Central District of California. For the reasons stated
11  below, defendant's motion is denied.

12                         **I. BACKGROUND**

13    The University of Phoenix ("UOP") is a private, for-profit
14  educational institution that offers classes at 362 independent
15  campuses throughout the United States, and through online programs.
16  Plaintiff's Opposition Ex. A. ("Opp."). UOP is a wholly owned
17  subsidiary of Apollo Group, Inc., ("Apollo") a publicly traded
18  corporation. Defendants Disclosure Statement 2. UOP employs
19  enrollment counselors in call centers nationwide, who receive calls
20  related to enrollment in UOP's programs. Plaintiff's Complaint ¶
21  15 ("Compl."); Opp. Ex. A.

22    **A.   _Sabol_ Action**

23    On July 30, 2009, plaintiffs Erik M. Sabol ("Sabol") and
24  Rebecca Odom ("Odom") filed a complaint against defendants UOP and
25  Apollo in the U.S. District Court, Eastern District of
26  Pennsylvania, on behalf of all academic and enrollment counselors

2

1  employed by defendants. <u>Sabol v. The University of Phoenix</u>, No. CV
2  09-03439-JCJ (E.D. Pa.) ("<u>Sabol</u>"); Motion to Dismiss ("Mtd.") Ex.
3  1. They alleged that UOP's counselors, at the direction of the
4  supervisors, routinely worked overtime hours without compensation.
5  Mtd. 4. On November 4, 2009, the court in <u>Sabol</u> issued an order
6  requiring the parties to complete discovery, concerning whether the
7  named plaintiffs are similarity situated to each other and/or other
8  individuals by February 1, 2010. <u>Id.</u> On January 25, 2010,
9  defendants filed a Motion for Partial Summary Judgment as to some
10 of plaintiff's claims. <u>Id.</u> On February 16, 2010, plaintiffs filed
11 a Motion for Conditional Certification. <u>Id.</u> at 5. Plaintiffs in the
12 <u>Sabol</u> case seek certification of a collective action consisting of
13 (1) academic or enrollment counselors employed by defendants who
14 (2) were not paid for all the hours worked in a given workweek, (3)
15 were not paid overtime, and (4) choose to opt-in to the FLSA
16 action. <u>Id.</u> at 3. The certification motion is fully briefed in the
17 Eastern District of Pennsylvania.

18       **B.   <u>Juric</u> Action**

19       On April 30, 2009, Plaintiff Dejan Juric ("Juric") filed a
20 complaint against UOP and Apollo in the Superior Court for the
21 State of California for the County of Los Angeles, which defendants
22 removed to the Central District of California on May 7, 2009. <u>Juric</u>
23 <u>v. The University of Phoenix, Inc.</u>, No. 90-CV-3214 ODW (C.D. Cal.)
24 ("<u>Juric</u>"). The complaint contained state law class action claims
25 under the California Labor Code, and Business & Professions Code,
26 but did not include any FLSA claims. <u>Mtd.</u> at 4. On January 6, 2010,

1   the court issued an order granting a stipulation for leave to
2   amend. Id. Juric subsequently abandoned his state law class claims,
3   and filed a first amended complaint ("FAC"). Id. Juric's FAC stated
4   a claim under the FLSA wherein he sought unpaid overtime wages,
5   among other relief. Id. The FAC sought collective action
6   certification for a class composed of enrollment and admission
7   counselors, employed by defendants within the past three years. Id.
8   On February 16, 2010, defendants filed a motion to dismiss, or in
9   the alternative, stay the Juric FLSA collective action claim. Id.
10  at 6. At the hearing, defendants indicated that they have reached
11  a tentative settlement in this case, and are now awaiting court
12  approval of the settlement.

13          C.   **Adoma** Action

14          On January 8, 2010, plaintiff Diane Adoma ("Adoma" or
15  "plaintiff") filed the instant action against UOP and Apollo. Id.
16  Plaintiff alleges that UOP's enrollment counselors were required
17  to under-report the number of hours they worked through a "dual
18  book keeping system." Compl. ¶ 16; Opp. 1. Sabol and Juric do not
19  proceed on a dual book keeping theory. They do, however, involve
20  claims for uncompensated overtime, on behalf of a similar class of
21  employees, brought against the same defendants. Plaintiff further
22  alleges that defendants have an accurate method of recording the
23  hours worked by their employees. Compl. ¶ 24. Specifically,
24  defendants' phone system tracks the exact time enrollment
25  counselors are at their desks taking calls. Id. at ¶ 22. The system
26  also records when employees leave their desks, and when they are

4

on break. Compl. ¶¶ 22, 23, 24. Plaintiff contends, however, that rather than recording payroll hours through the phone system, defendants used a highly inaccurate web-based system. Id. at ¶ 17.

Defendants' web-based system requires overtime hours to be affirmatively entered. Id. at ¶ 19. Plaintiff alleges that defendants had a policy of only entering overtime in increments of thirty minutes. Id. at ¶ 21. Plaintiff contends that the web-based system was often broken, and when working was so slow that it was difficult or impossible to use. Id. ¶¶ 18, 20. Accordingly, employees routinely did not enter hours they worked, and were not compensated for their overtime hours. Id.

Plaintiff Adoma's complaint proposes three different potential group actions. First, plaintiff seeks to bring a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(1), and (b)(3) for violations of state law. Id. at ¶ 11. In this class, plaintiff seeks to represent enrollment counselors who are currently employed or have been employed in California within the 4 years prior to filing, who: (1) worked more than 8 hours in a day or 40 hours in a week without being compensated at the proper premium rate, (2) worked more than five hours without a proper meal break, (3) received a pay stub that did not accurately reflect all the information required by labor code s 226, or (4) were willfully not paid all wages upon leaving employment. Id.

Plaintiff further seeks collective action certification under FLSA as to the following collective class: all persons in California who worked as enrollment counselors during a period of

1    three years prior to the commencement of the action.[1] <u>Id.</u> at ¶ 38.

2    Finally, Plaintiff Adoma brings an individual claim under the

3    Private Attorney General Act ("PAGA") for California Labor Code

4    violations committed on "[a]ll [e]nrollment [c]ounselors or anyone,

5    regardless of job title, who is primarily engaged in assisting

6    prospective students with enrollment." <u>Id.</u> at ¶ 51.

7                           **II. ANALYSIS**

8        Plaintiff's complaint presents one federal claim under FLSA

9    for over-time pay and liquidated damages. 29 U.S.C. §§ 207, 216.

10   Plaintiff's remaining twelve causes of action arise under state

11   law. Defendants do not address the merits of plaintiff's claims

12   in their motion to dismiss, but rather argue for dismissal of

13   the federal claim and for stay of the state law claims under the

14   first-to-file rule. Defendants also move to transfer this case

15   to the Central District of California.

16       **A.   First-to-File Rule**

17       The "first-to-file rule" is a doctrine of federal comity

18   that permits a district court to decline jurisdiction over an

19   action "when a complaint involving the same parties and issues

20   has already been filed in another district." <u>Pacesetter Systems,</u>

21   <u>Inc. v. Medtronic, Inc.</u>, 678 F.2d 93, 94-95 (9th Cir. 1982).

22   "The most basic aspect of the first-to-file rule is that it is

23   discretionary; 'an ample degree of discretion, appropriate for

24

25       [1]   While plaintiff's complaint indicates that she seeks
     collective action certification of a nationwide group, Compl. ¶ 38,
26   plaintiff stated at the hearing on this motion that her FLSA claim
     is limited to certification of California residents only.

1  disciplined and experienced judges, must be left to the lower

2  courts.'" <u>Alltrade, Inc. v. Uniweld Products, Inc.</u>, 946 F.2d

3  622, 628 (9th Cir. 1991) (quoting <u>Kerotest Mfg. Co. V. C-O-Two</u>

4  <u>Fire Equipment Co.</u>, 342 U.S. 180, 183-84 (1952)). Although

5  discretionary, the rule "serves the purpose of promoting

6  efficiency well and should not be disregarded lightly." <u>Church</u>

7  <u>of Scientology of Ca. v. U.S. Dept. of Army</u>, 611 F.2d 738, 750

8  (9th Cir. 1979). In applying the first-to-file rule, a court

9  looks to three threshold factors: "(1) the chronology of the two

10  actions; (2) the similarity of the parties, and (3) the

11  similarity of the issues." <u>Alltrade</u>, 946 F.2d at 625-26. If this

12  action meets the requirements of the first-to-file rule, the

13  court has the discretion to transfer, stay, or dismiss the

14  action. <u>Id.</u> at 622. The district court retains the discretion,

15  however, to disregard the first-to-file rule in the interests of

16  equity. <u>Id.</u> at 622. Plaintiff's various claims present distinct

17  factual and legal issues, which are addressed below.

18          **1.   Chronology of the Actions**

19      The <u>Sabol</u> complaint was filed on July 30, 2009. Mtd. 3.

20  Plaintiff filed the instant complaint on January 8, 2010. Mtd.

21  11. Plaintiff nonetheless disputes that the instant action is

22  the second-filed case. Plaintiff contends that the <u>Sabol</u> action

23  has not commenced for the purpose of the first-to-file rule in

24  the absence of a signed and filed consent by the plaintiff, as

25  required to commence a collective action.

26      Collective actions under section 216(b) differ from class

1 | actions as defined by Rule 23 of the Federal Rules of Civil

2 | Procedure. A FLSA action under 216(b) is only a collective

3 | action if other plaintiffs affirmatively opt-in through written

4 | and filed consent. <u>Smith v. T-Mobile USA Inc.</u>, 570 F.3d 1119,

5 | 1121-22 (9th Cir. 2009). A collective action under the FLSA is

6 | considered commenced in the case of any individual claimant

7 |
> on the date when the complaint is filed, if he is
8 | specifically named as a party plaintiff in the
> complaint and his written consent to become a party
> plaintiff is filed on such date in the court in which
9 | the action is brought; or [] if such written consent
> was not so filed or if his name did not so appear--on
10 | the subsequent date on which such written consent is
> filed in the court in which the action was commenced.

11 |

12 | 29 U.S.C. § 256(a)-(b). This provision, however, applies only to

13 | the statute of limitations. <u>See</u> <u>Drabkin v. Gibbs & Hill</u>, 74 F.

14 | Supp. 758, 762 (S.D.N.Y. 1947) ("[T]he requirement for the

15 | filing of the 'written consent to become a party plaintiff' is

16 | for the specific purpose of determining the applicability of the

17 | statute of limitations. An FLSA action "commences" when the

18 | complaint is filed with the court); <u>see also</u> Fed. R. Civ. P. 3

19 | ("A civil action is commenced by filing a complaint with the

20 | court"); <u>Pacesetter</u>, 678 F.2d at 96 n. 3 ("A federal action is

21 | commenced by the filing of the complaint, not by service of

22 | process . . . It is thus the filing of actions in coordinate

23 | jurisdictions that invokes considerations of comity.")(citations

24 | omitted).

25 |     The <u>Sabol</u> action commenced when it was filed on July 30,

26 | 2009, over five months before the instant action, Mtd. 3. Thus,

1  the first requirement of the first-to-file rule is met.[2]

2  **2.   Similarity of the parties**

3      The similarity of parties requirement for the first-to-file

4  rule is also met.  It has been held that the first-to-file rule

5  does not require strict identity of the parties, but rather

6  substantial similarity. Inherent.com v. Martindale-Hubbell, 420

7  F. Supp. 2d 1093, 1097 (N.D. Cal. 2006). In a collective action,

8  the classes, and not the class representatives, are compared.

9  Ross v. U.S. Bank Nat. Ass'n, 542 F. Supp. 2d 1014, 1020 (N.D.

10 Cal. 2008)(citing Cal. Jur. 3d Actions § 284).

11     District courts, however, disagree as to whether this

12 comparison can occur before any collective action has been

13 certified. For example, in Lac Anh Le v. PricewaterhouseCoopers

14 LLP, No. C-07-5476 MMC, 2008 WL 618938, * 1 (N.D. Cal. 2008), a

15 district court held that the parties in an earlier filed FLSA

16 suit were not similar to parties in a later filed FLSA suit

17 arising out of the same conduct because the district court in

18 the earlier filed FLSA suit had not yet certified a collective

19 action. As such, the court reasoned, the plaintiffs in the two

20 actions were not similar because, at the time of the order, they

21 were separate individuals. Id. Other district courts, however,

22 have held that the first-to-file rule applies to similar

23 proposed group actions before certification. For example, in

24

25     [2] The court does not reach the question as to whether the

26 Juric action was commenced prior to the instant action because
Sabol was clearly filed before both Juric.

1   <u>Weinstein v. Metlife, Inc.</u>, No. C 06-04444 SI, 2006 WL 3201045,

2   *4 (N.D. Cal. Nov. 6, 2006), the court held that, "In a class

3   action, however, it is the class, not the representative, that

4   is compared." <u>Id.</u> (internal citation omitted); <u>see also</u> <u>Fuller</u>

5   <u>v. Abercrombie & Fitch Stores, Inc.</u>, 370 F. Supp. 2d 686, 689

6   (E.D. Tenn. 2005) (finding that parties substantially overlapped

7   where "both actions seek certification of the same collective

8   class, defining the class as all current or former Abercrombie

9   employees who worked as managers-in-training or assistant

10  managers and were not properly compensated for overtime work"

11  even though the named plaintiffs were different individuals.).

12  The court then stayed the matter pending resolution of a

13  certification order in the first-filed cased. <u>Id.</u> This same

14  district court later applied the same standard in <u>Ross v. U.S.</u>

15  <u>Bank Nat. Ass'n</u>, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008),

16  yet decided that the parties were not similar because in the

17  earlier filed suit, the district court had denied a motion for

18  certification. This court is persuaded that <u>Weinstein</u>, <u>Ross</u>, and

19  <u>Fuller</u> adopt the appropriate standard for determining similarity

20  where two cases are seeking collective action status, yet where

21  a collective action order had not yet been issued by the first

22  filed court.

23      Here, the named defendants in the <u>Sabol</u> and <u>Adoma</u> actions

24  are identical. Moreover, the proposed classes for the collective

25  actions are substantially similar in that both classes seek to

26  represent at least some of the same individuals. If the

1  collective action in <u>Sabol</u> is certified, plaintiff may be able

2  to opt in. Accordingly, the second prerequisite of the

3  first-to-file rule is satisfied.

4  **3.   Similarity of the issues**

5  Ultimately, the applicability of the first-to-file rule to

6  plaintiff's FLSA claim turns the similarity of the issues in

7  <u>Adoma</u> and <u>Sabol</u>. Nonetheless, it has been held that for the

8  first-to-file rule to apply, the issues in two actions need not

9  be identical. <u>Inherent.com,</u> 420 F. Supp. 2d at 1097. Rather, the

10  issues need only be "substantially similar." <u>Id.</u>  While the

11  particular facts in <u>Inherent.com</u> might result in a different

12  analysis by this court, the principle applied there appears, in

13  general, sound.

14  Again, in <u>Jumapao v. Washington Mutual Bank</u>, No.

15  06-CV-2285, 2007 WL 4258636, *1 (S.D. Cal. Nov. 30, 2007), the

16  first-filed complaint was brought on behalf of Washington Mutual

17  Bank's current and former loan consultants. This class action

18  complaint contained allegations of overtime compensation

19  violations of the FLSA and state law claims, including

20  violations of Cal. California Business & Professions Code §

21  17200, and various provisions of the California Labor Code. The

22  <u>Jumapao</u> plaintiff subsequently filed an action, alleging among

23  other things, violations of the California Business &

24  Professions Code § 17200, various provisions of the California

25  Labor Code, and the FLSA. <u>Id.</u> The court observed that "both

26  cases arise from Washington Mutual's failure to pay overtime and

1 | minimum wages to loan consultants, as well as its failure to
2 | comply with California record-keeping requirements." Id. at *3.
3 | The similarity in allegations would require the court to make
4 | similar determinations, so that the court found that the issues
5 | were substantially similar enough for the first-to-file rule to
6 | apply. Id.

7 | Here, both Sabol and Adoma advance FLSA off-the-clock
8 | claims for unpaid overtime. The ultimate issue to be determined
9 | in both actions is whether UOP enrollment counselors worked
10 | uncompensated overtime hours. Plaintiff Adoma's opposition
11 | brief, however, distinguishes her FLSA claim from Sabol with an
12 | additional unpaid overtime theory. Specifically, plaintiff
13 | argues that UOP offered free tuition to employees, which was not
14 | included in determining the employees' rates of pay. Opp. 9. The
15 | FLSA requires that, but for narrowly defined exclusions, all
16 | compensation be included in an employee's regular rate of pay.
17 | 29 C.F.R. § 778.2000. Free tuition is not listed as an
18 | exclusion. Id. According to plaintiff, even if the major factual
19 | issue to be determined in Sabol, whether plaintiffs worked off
20 | the clock, is determined in defendants' favor, plaintiffs in
21 | Adoma would still be entitled to additional overtime
22 | compensation under the FLSA for time worked on the clock.[3] Opp.

23 |

24 | [3] It is not clear if free tuition is available to UOP
employees in Pennsylvania, or if the Sabol plaintiffs could have
25 | raised the issue. Plaintiff Adoma claims "it is very likely that
free tuition is not available in Pennsylvania, so that the Sabol
26 | plaintiffs cannot adequately represent all the legal issues." See
Opp. 9. This contention is based on the fact that in Sabol,

1  9. Defendants contend that this additional allegation is not a

2  matter of distinguishing facts so much as a matter of a

3  different remedy, or damages, sought. See, generally,

4  Pacesetter, 678 F.2d at 95-6 (finding that the first-to-file

5  rule applicable where "two actions differ only as to the remedy

6  sought", but the underlying legal issues were the same).

7  Defendants also argue that this theory of relief was not raised

8  in plaintiff's complaint.

9      Plaintiff's additional FLSA theory does not necessarily

10 prevent the application of the first-to-file rule. The central

11 question in both Sabol and Adoma remains whether a class is

12 entitled to compensation for unpaid, off-the-books overtime.

13 See, generally, Ward v. Follett Corp., 158 F.R.D. 645, 648-49

14 (N.D. Cal. 1994) (applying the first-to-file rule where the

15 central question in both actions was whether plaintiff was

16 entitled to royalties). This court could not arrive at the

17 central question of the alternate theory without addressing the

18 common factual issues implicated in both cases. Thus, the issues

19 are also similar between Sabol and Adoma, and accordingly, the

20 first-to-file rule might well apply in this case.

21          d.   Exception

22      Even assuming the three requirements of the first-to-file

23 rule are satisfied here, it does not follow that application of

24 the rule is appropriate. The doctrine is discretionary and,

25 _____

26 plaintiffs did not advance the claim.

1  accordingly, the court may disregard it in the interests of

2  equity. <u>Alltrade</u>, 946 F.2d at 622. "The circumstances under

3  which an exception to the first-to-file rule typically will be

4  made include bad faith, . . . anticipatory suit, and forum

5  shopping." <u>Id.</u> at 627-28; <u>see, generally,</u> <u>Inherent.com</u>, 420 F.

6  Supp.2d at 1099 ("because of the anticipatory nature of the

7  [first suit] it would be inequitable to dismiss the current

8  action under the first-to-file doctrine"). In applying the first

9  to file rule, "courts are not bound by technicalities." <u>Church</u>

10 <u>of Scientology of California v. U.S. Dept. of Army</u>, 611 F.2d

11 738, 750 (9th Cir. 1979).  The court's discretion is broad. In

12 <u>Alltrade</u>, 946 F.2d at 628, the Ninth Circuit found that fairness

13 considerations and equitable concerns could bar the application

14 of the rule. In <u>Juampao</u>, 2007 WL 4258636 at *3, the court noted

15 that demonstrations of prejudice could bar its application as

16 well.

17      Plaintiff Adoma offers several reasons for this court to

18 exercise its discretion and decline to apply the first-to-file

19 rule. First, plaintiff contends that application of the rule to

20 her FLSA claim would prejudice the California litigants she

21 seeks to represent. As discussed above, plaintiff Adoma offers

22 an alternate theory of liability under FLSA for on-the clock

23 free tuition, and a different theory of liability for unpaid

24 overtime based on a dual-book keeping system. Opp. at 9.

25 Plaintiff asserts that to dismiss or stay their claim would

26 deprive them of the opportunity to litigate under these

1 theories. <u>Id.</u>

2     Plaintiff also asserts that California plaintiffs would be

3 prejudiced if they are required to wait for <u>Sabol</u> to be

4 certified. <u>Id.</u> at 7. <u>Sabol</u> has been pending since July 30, 2009,

5 without certification. <u>Id.</u> Plaintiff contends that California

6 collective action members have lost nearly one year of their

7 FLSA claim because of delays in <u>Sabol</u>. <u>Id.</u> According to

8 plaintiff, the <u>Sabol</u> plaintiffs have been too overreaching in

9 their claims, and have not conducted any California discovery,

10 so that they are ill-positioned to represent the rights of

11 California litigants. <u>Id.</u> Plaintiff asserts that the <u>Sabol</u> court

12 may not certify a nationwide collective action, and if it does,

13 it might be years before it could address the situation of

14 California plaintiffs. <u>Id.</u> None of these California employees

15 have tolled the applicable statute of limitations, and plaintiff

16 argues that it would is unfair to force them to wait under these

17 circumstacnes. <u>Id.</u> Plaintiff contends that they are prepared to

18 go forward with certification. <u>Id.</u> at 8.

19     Further, unlike in a class action where the statute of

20 limitations is tolled while a plaintiff seeks class

21 certification, the rights members of a proposed collective

22 action are not so protected. Under FLSA, a "cause of action . .

23 . may be commenced within two years after the cause of action

24 accrued, and every such action shall be forever barred unless

25 commenced within two years after the cause of action accrued,

26 except that a cause of action arising out of a willful violation

15

1  may be commenced within three years after the cause of action

2  accrued." 29 U.S.C. § 255(a). "[A] collective or class action

3  instituted under the Fair Labor Standards Act of 1938 . . .

4  shall be considered to be commenced in the case of any

5  individual claimant—

6          (a) on the date when the complaint is filed, if he is
           specifically named as a party plaintiff in the
7          complaint and his written consent to become a party
           plaintiff is filed on such date in the court in which
8          the action is brought; or
           (b) if such written consent was not so filed or if his
9          name did not so appear—on the subsequent date on which
           such written consent is filed in the court in which
10         the action was commenced.

11 Id. at § 256. Accordingly, the statute of limitations for

12 members of plaintiff's proposed collective action runs until the

13 class member opts in to the action. Here, plaintiffs have

14 presented some evidence that the collective action proposed in

15 Sabol, if certified, has a reasonable chance of being limited to

16 Pennsylvania residents. As such, it seems possible that the

17 rights of potential collective members in every other

18 jurisdiction may be seriously infringed. Moreover, to the extent

19 that delays in Sabol are the result of ineffective lawyering by

20 plaintiffs' counsel, as plaintiff contends, class members

21 nationwide may be harmed by not allowing Adoma's case to move

22 forward to at least collective action certification. Lastly, to

23 the extent that plaintiff brings claims not brought by

24 plaintiffs in Sabol, the statute of limitations will continue to

25 run on these theories of liability until conclusion of the Sabol

26

16

1 litigation.[4]

2     The court is persuaded that the equities in this case tip

3 in favor of an exception to the first-to-file rule.

4 Specifically, the <u>Sabol</u> case has not advanced even to

5 certification. Further, plaintiff brings additional theories of

6 recovery. Moreover, the fact that plaintiff also seeks relief

7 under California state law, which requires entirely different

8 calculations for overtime compensation, demonstrates that

9 judicial resources will not be significantly conserved.

10 California courts will, if plaintiff is successful, notice a

11 class action concerning overtime pay, and these class members

12 will be required to participate in two separate claims for

13 overtime compensation. Under the totality of the circumstances,

14 the court finds that the first-to-file rule should not be

15 applied in this case.[5]

16     **B.  Transfer of Venue**

17     Defendants move for transfer of venue from the Eastern

18 District of California to the Central District of California

19 _____

20     [4] Finally, I note that defendants' motion, if granted, works
to deprive plaintiff of her own attorney.  A matter not generally
21 discussed in the cases.

22     [5] Defendants also seek to apply the first-to-file rule to
plaintiff's state law claims. Plaintiff brings twelve state law
23 claims. These include state law class action claims, individual
Private Attorney General Act claims, and individual retaliation and
record production claims. With the exception of the retaliation and
24 record production claims, these state law causes of action are
subject to the first-to-file rule for the same reasons as
25 plaintiff's FLSA claim is. Nonetheless, the same exceptions apply
and, thus, defendant's motion is likewise denied as to plaintiff's
26 state law claims.

1   under U.S.C § 1404(a), arguing that it is more convenient to

2   litigate this case in the Central District of California.[6]

3   Defendants have presented information indicating that about 60

4   percent of potential class and collective action members reside

5   in the Central District as opposed to the approximately 40

6   percent residing in the Eastern District.

7        Transfer is within the discretionary power of the court.

8   Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). A

9   court considers two prongs when ruling on a motion to transfer.

10  (1) The district where the moving party seeks to transfer must

11  be one where the case "might have been brought", and (2)

12  transfer must serve the convenience of the parties and

13  witnesses, and the interests of justice. See 28 U.S.C. §

14  1404(a).

15       A plaintiff's choice of forum is rarely disturbed, unless

16  the balance is strongly in favor of the defendant. Gulf Oil

17  Corp. v. Gilbert, 330 U.S. 501, 508 (1947). A party moving for

18  transfer for the convenience of the witnesses must demonstrate,

19  through affidavits or declarations containing admissible

20  evidence, who the key witnesses will be and what their testimony

21  will generally include. E & J Gallo Winery v. F. & P. S.p.A.,

22  899 F. Supp. 465, 466 (E.D. Cal. 1994).

23  _____

24        [6] Defendants also move to transfer to the Central District of
    California under the first-to-file rule because Juric, the case
    that defendants are seeking court approval of a settlement, was
25  filed prior to Adoma. At the hearing, defendants indicated that
    they are no longer moving to transfer on this ground because of the
26  anticipated court-approved settlement.

1      As a preliminary matter, the instant action could have been

2   brought in the Central District. Indeed, the <u>Juric</u> action itself

3   testifies to this fact. However, it is not clear that transfer

4   would be more convenient to the parties and witnesses. The party

5   moving for transfer must demonstrate, through affidavits or

6   declarations containing admissible evidence, who the key

7   witnesses will be and what their testimony will generally

8   include. <u>E & J Gallo</u>, 899 F. Supp. at 466. Defendants have not

9   specified which witnesses, if any, would be inconvenienced.

10  Rather, defendants offer that the number of potential collective

11  action and class action members in the Central District exceeds

12  those in the Eastern District and, the court assumes, they and

13  their supervisors would be potential witnesses. Dec. A. If it

14  were the case that nearly all California potential collective

15  action members were in the Central District, defendants'

16  argument would carry some weight. Nonetheless, here, where

17  approximately two fifths of the potential class members are in

18  the Eastern District, the transfer of venue is not warranted.

19  Accordingly, defendants have not met their burden, and their

20  motion to transfer venue is denied.

21                     **III. CONCLUSION**

22      For the reasons stated above, defendants' motion, Dkt. No.

23  8, is DENIED.

24      IT IS SO ORDERED.

25      DATED:  May 3, 2010.

26
                              LAWRENCE K. KARLTON
                              SENIOR JUDGE
                              UNITED STATES DISTRICT COURT