UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DIANE ADOMA,

                                       NO. CIV. S-10-0059 LKK/GGH

        Plaintiff,

    v.

                                    O R D E R

THE UNIVERSITY OF PHOENIX,
INC., et al.,

        Defendants.

_____/

     Class plaintiffs bring several wage and hour claims against defendants University of Phoenix, Inc., a for-profit university, and Apollo Group, Inc., its parent company. The parties bring cross-motions for partial summary judgment on the limited question of whether defendants were required to include the value of a tuition benefit when calculating an employee's regular rate of pay for the purpose of paying overtime under California law. For the reasons described below, both motions are denied without prejudice.

////

////

1

**I. BACKGROUND**

**A.   Factual Background**

Defendant University of Phoenix ("UOP") is a private for-profit educational institution that offers classes at 362 independent campuses throughout the United States and through online programs. Defendant Apollo Group, Inc. ("Apollo") is the parent company of UOP and handles all of the administrative functions relating to payroll.

Class representatives Diane Adoma ("Adoma") and Michelle Abbaszadeh ("Abbaszadeh") worked as non-exempt, Enrollment Counselors ("ECs") for the defendants. Abbaszadeh began her employment as a "temporary" EC in late September 2009. Upon completing her probationary period of several months, she converted to a "permanent" employee, at which time she became eligible for UOP's Education Tuition Program ("ETP") that provides a 100% tuition waiver for course work taken at UOP and other subsidiaries of Apollo. Abbaszadeh took advantage of the ETP, enrolling in three courses during her employment. She also testified that the courses would have cost her approximately two thousand dollars each. Abbaszadeh Dep. 66:16-21, June 29, 2010, Doc. No. 115-3. Abbaszadeh's hourly pay rate was $19.23. Class Representative Adoma apparently did not take advantage of the tuition benefit.

Dependents of eligible employees are also able to receive an 80% discount in tuition through the ETP. Additionally, the program provides for tuition reimbursement for course work taken at non-Apollo institutions that meet certain criteria, including that the

1  course is not offered by any Apollo subsidiary, will improve the
2  employee's current job/professional responsibilities, and is
3  approved by the president of Apollo.

4      UOP's ETP policy states that a purpose of the program is "to
5  help [UOP] meet its commitment of being a dominant force in higher
6  education" because "employees are able from a student consumer
7  perspective, to help maintain and improve the quality of the
8  Company's educational services." Decl. of Mark Brooks Ex. 1. 3,
9  July 12, 2010, Doc. No. 38-1. Employees who utilize this benefit
10  are responsible for paying the cost of books and materials, class
11  fees, and a discounted "rEsource fee" for electronic course
12  materials. Id.

13      This benefit applies only to active, full-time, regular
14  employees. Employees who are subject to certain disciplinary
15  actions or who are on 90-day extended leaves of absence are
16  ineligible. Employees on more limited leaves of absence under the
17  Family Medical Leave Act, 30-day personal leave, military leave,
18  and various state-mandated leaves are able to retain their
19  eligibility for the benefit. Before receiving the benefit,
20  employees must achieve a score of 100% on a certain computer based
21  training course.

22      **B.   Procedural History**

23      On January 8, 2010, plaintiffs filed a complaint, alleging
24  claims under the California Labor Code, the Business and
25  Professions Code, and the federal Fair Labor Standards Act ("FLSA")
26  and seeking class certification and certification as an FSLA

3

1   collective action. Complaint, Doc. No. 2 (Jan. 8, 2010). On August
2   13, 2010, this court transferred plaintiffs' federal claims to the
3   Eastern District of Pennsylvania, pursuant to the first-to-file
4   rule, and in light of <u>Sabol v. The University of Phoenix</u>, No. 09-
5   3439-JCJ, 2010 WL 1956591 (E.D. Pa. May 12, 2010). Order, Doc. No.
6   70 (Aug. 13, 2010). <u>Sabol</u> was filed as a collective action against
7   the same defendants and encompasses the California plaintiffs.
8   There, as here, the plaintiffs alleged unpaid hours and unpaid
9   overtime under the FSLA for ECs. The question of whether the
10  tuition benefit should be included in the regular rate of pay is
11  not before the court in <u>Sabol</u>.[1] <u>See</u> Order, Doc. No. 28, at 12 (May
12  3, 2010).

13      On August 31, 2010, this court concluded that it has
14  jurisdiction over plaintiff's state law claims under the Class
15  Action Fairness Act, 28 U.S.S. 1332(d), and granted the plaintiffs'
16  motion for class certification under Fed. R. Civ. P. 23(b)(3).

17      Class plaintiffs bring four state law claims. First, they
18  allege a claim for unpaid "off-the-clock" overtime under California
19  law. Second, plaintiffs bring a claim for violation of California
20  law for defendants' failure to include the value of the tuition
21  benefit when calculating class members' regular rate. Third,
22  plaintiffs contend that defendants obliged their employees to miss
23  meal periods. Finally, plaintiffs bring state law claims for

24
_____

25      [1] Counsel for plaintiffs represented that plaintiffs' counsel
    in <u>Sabol</u> told him that he is not pursuing a claim that the tuition
26  benefit should be included in ECs' regular rate of pay.

1  waiting time penalties and inaccurate pay stubs.

2       The parties have filed cross motions for partial summary

3  judgment, seeking disposition of the second claim. The motions were

4  heard on February 28, 2011.

5  **II. STANDARD FOR FED. R. CIV. P 56 MOTION FOR SUMMARY JUDGMENT**

6       Summary judgment is appropriate when there exists no genuine

7  issue as to any material fact. Such circumstances entitle the

8  moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c);

9  see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970);

10 Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995). Under

11 summary judgment practice, the moving party

12       always bears the initial responsibility of informing the
         district court of the basis for its motion, and
13       identifying those portions of "the pleadings,
         depositions, answers to interrogatories, and admissions
14       on file, together with the affidavits, if any," which it
         believes demonstrate the absence of a genuine issue of
15       material fact.

16 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed.

17 R. Civ. P. 56(c)).

18      If the moving party meets its initial responsibility, the

19 burden then shifts to the opposing party to establish the existence

20 of a genuine issue of material fact. Matsushita Elec. Indus. Co.

21 v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986); see also First

22 Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89

23 (1968); Secor Ltd., 51 F.3d at 853. In doing so, the opposing party

24 may not rely upon the denials of its pleadings, but must tender

25 evidence of specific facts in the form of affidavits and/or other

26 admissible materials in support of its contention that the dispute

5

1   exists. Fed. R. Civ. P. 56(e); see also First Nat'l Bank, 391 U.S.
2   at 289. In evaluating the evidence, the court draws all reasonable
3   inferences from the facts before it in favor of the opposing party.
4   Matsushita, 475 U.S. at 587-88 (citing United States v. Diebold,
5   Inc., 369 U.S. 654, 655 (1962) (per curiam)); County of Tuolumme
6   v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).
7   Nevertheless, it is the opposing party's obligation to produce a
8   factual predicate as a basis for such inferences. See Richards v.
9   Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). The
10  opposing party "must do more than simply show that there is some
11  metaphysical doubt as to the material facts . . . . Where the
12  record taken as a whole could not lead a rational trier of fact to
13  find for the nonmoving party, there is no 'genuine issue for
14  trial.'"  Matsushita, 475 U.S. at 586-87 (citations omitted).

15      Rule 56(f) of the Federal Rules of Civil Procedure allows a
16  party to avoid summary judgment where affidavits are not available
17  which are necessary to support a party's opposition to the motion
18  for summary judgment. Fed. R. Civ. P. 56(f). Rule 56(f) motions
19  are to be granted freely where the party requesting additional time
20  has complied with the Rule's requirements. Burlington Northern
21  Santa Fe R. Co. v. Assiniboine and Sioux Tribes of Fort Peck
22  Reservation, 323 F.3d 767, 773-774 (9th Cir. 2003); Metabolife
23  Int'l, Inc. v. Wornick, 264 F.3d 832, 846 (9th Cir. 2001).  In
24  order to be successful on a 56(f) motion, the party must show (1)
25  that they have set forth in affidavit form the specific facts that
26  they hope to elicit from further discovery, (2) that the facts

1  sought exist, and (3) that these sought-after facts are "essential"
2  to resist the summary judgment motion.  <u>State of Cal., on Behalf</u>
3  <u>of California Dept. of Toxic Substances Control v. Campbell</u>, 138
4  F.3d 772, 779 (9th Cir. 1998); <u>see also</u> <u>VISA Intern. Service Ass'n</u>
5  <u>v. Bankcard Holders of America</u>, 784 F.2d 1472, 1475 (9th Cir. 1986)
6  ("[D]enial of a Rule 56(f) application is generally disfavored
7  where the party opposing summary judgment makes (a) a timely
8  application which (b) specifically identifies (c) relevant
9  information, (d) where there is some basis for believing that the
10  information sought actually exists.").

11      Rule 56(f) motions should be granted liberally "unless the
12  non-moving party has not diligently pursued discovery of the
13  evidence." <u>Wichita Falls Office Assoc. v. Banc One Corp.</u>, 978 F.2d
14  915, 919 n. 4 (5th Cir.1992). The Ninth Circuit has also held that
15  denial of 56(f) motions is "especially inappropriate where the
16  material sought is also the subject of outstanding discovery
17  requests." <u>VISA Intern. Service Ass'n</u>, 784 F.2d at 1475.

18                        **III. ANALYSIS**

19      **A.    Whether the Court Should Decide This Question**

20      As an initial matter, the court must determine whether it
21  should decide this question because to do so concerns a resolution
22  of federal law, and all federal claims are to be decided in the
23  Eastern District of Pennsylvania. Federal wage and hour laws and
24  regulations set the floor for wage and hour requirements under
25
26                             7

1  California law. See Harris v. Investor's Business Daily, Inc., 138

2  Cal. App. 4th 28, 32 (2006). Accordingly, so long as there is no

3  California authority on whether a certain type of remuneration must

4  be included in the regular rate of pay, federal law dictates

5  whether inclusion is required. See Huntington Memorial Hosp. v.

6  Superior Ct., 131 Cal. App. 4th 893, 902, 903 (2005). The specific

7  question at issue here, while on its face a question of California

8  law, will nonetheless require interpretation of federal laws and

9  regulations because California statutes and regulations have not

10  defined the regular rate of pay. While ordinarily the court would

11  pause before issuing such a ruling on federal law in light of the

12  concurrent litigation in Pennsylvania, the court here declines to

13  do so. Specifically, the Sabol action does not contain a claim

14  concerning whether the tuition benefit should be included in

15  calculation of EC's regular rate of pay nor is there any indication

16  that the Sabol plaintiffs are pursuing such a claim. Sabol v. The

17  University of Phoenix, Collective Action Complaint, No.

18  209CV34390349, 2009 WL 2600923 (E.D. Pa. July 30, 2009); see also

19  Order, Doc. No. 70 (Aug. 13, 2010). Thus, the court now turns to

20  whether UOP's tuition benefit for ECs should be calculated in their

21  regular rate of pay.

22  **B.  Determination of the Regular Rate of Pay Under**

23  **California Law**

24  The parties agree that whether the tuition benefit must be

25  included in the calculation of the class members' regular rate of

26  pay under California law is determined by whether the benefit must

1   be included under the Fair Labor Standards Act ("FLSA"). 29 U.S.C.

2   § 207. <u>Huntington Memorial Hosp. v. Super. Ct.</u>, 131 Cal. App. 4th

3   893, 902-03 (2005) (summarizing California Department of Labor

4   Standards Enforcement repeatedly held position that failure of the

5   California's Industrial Welfare Commission to define the regular

6   rate indicates its intent that California shall adhere to the

7   definition under the FLSA and subsequently applying Section 207 to

8   determine regular rate under California law); <u>see</u> <u>Lujan v. S. Ca.</u>

9   <u>Gas Co.</u>, 96 Cal. App. 4th 1200, 1209 (2002) (California "may use

10   its own definition of 'regular rate' and may set its own standard

11   regarding the adequacy of overtime pay *as long as it does not fall*

12   *below the federal standards*.") (emphasis added); <u>see also</u> <u>Advanced-</u>

13   <u>Tech Sec. Servs., Inc. v. Super. Ct.</u>, 163 Cal. App. 4th 700, 707

14   (2008) (California Supreme Court frequently refers to federal

15   precedent in interpreting parallel language in state labor

16   legislation.). Here, neither party contends that California law

17   explicitly provides for a more expansive standard for calculating

18   the regular rate than does the FLSA with respect to whether the

19   tuition benefit at issue must be included. Thus, this question of

20   state law will be determined through interpretation of federal

21   statutes and regulations.

22      **C.   Calculation of the Regular Rate of Pay Under the FLSA**

23          **1.   FSLA Regulations Permit Only Enumerated Exceptions**

24      The "regular rate" for purposes of overtime under the FSLA is

25   an hourly rate. <u>Walling v. Youngerman-Reynolds Hardwood Co.</u>, 325

26   U.S. 419, 424 (1945). When employees are paid on a non-hourly

1  basis, the regular rate is determined by dividing the total

2  remuneration by the amount of hours actually worked. 29 C.F.R.

3  778.109. The regular rate is multiplied by one and one half to

4  determine the rate of pay for the employee's overtime hours. 29

5  U.S.C. 207(a)(1).

6       The FLSA enumerates the forms of compensation that an employer

7  may exclude from the regular rate when calculating overtime pay.

8  The Act provides that an employer shall not "employ any of his

9  employees . . . for a workweek longer than forty hours unless such

10 employee receives compensation for his employment in excess of the

11 hours above specified at a rate not less than one and one-half

12 times the regular rate at which he is employed." 29 U.S.C. §

13 207(a)(1). The general rule is that the "regular rate" includes

14 "all remuneration." 29 U.S.C. § 207(e). Section 207(e) then

15 specifies eight exemptions from the general rule. Only one

16 exemption from the general rule is relevant to the instant dispute.

17 Under this exemption, the regular rate

18       shall not be deemed to include . . .
            (2) payments made for occasional periods when no
19     work is performed due to vacation, holiday, illness,
       failure of the employer to provide sufficient work, or
20     other similar cause; reasonable payments for traveling
       expenses, or other expenses, incurred by an employee in
21     the furtherance of his employer's interests and properly
       reimbursable by the employer; and *other similar payments*
22     *to an employee which are not made as compensation for*
       *his hours of employment . . . .*

23

24 29 U.S.C. § 207(e) (emphasis added) ("Subsection (e)(2)"). All

25 other forms of remuneration must be included in the regular rate.

26 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.200(c).

1        The employer bears the burden of proof to show that a
2    particular payment falls within the exemptions enumerated in the
3    FSLA. Idaho Sheet Metal Workers, Inc., v. Wirtz, 383 U.S. 190, 206,
4    209 (1996)) (holding that the burden of proving an exemption under
5    the FSLA is upon the employer); Local 246 Util. Workers Union of
6    Ame. v. S. Cal. Edison Co., 83 F.3d 292, 296 (9th Cir. 1996)
7    ("Local 246"). Exemptions are narrowly construed. Cleveland v. City
8    of Los Angeles, 420 F.3d 981, 1988 (9th 2005). Thus, defendant
9    bears the burden to prove that the tuition benefit should be
10   considered an "other similar payment" under Subsection e(2).

11       While there is little binding precedent on the interpretation
12   of this Subsection, the Ninth Circuit has issued one opinion
13   explaining the meaning of "similar payments to an employee which
14   are not made as compensation for his hours of employment." In Local
15   246, 83 F.3d at 295, an employer argued that a disability plan's
16   reference to "regular weekly wage" implied that the supplemental
17   payments under that plan were "not tied to hours but rather to the
18   regular weekly wage." Thus, the employer argued, the payments were
19   not made as compensation for hours of employment. Id. The Ninth
20   Circuit disagreed. Specifically, it held that, when calculating the
21   regular rate of pay, "The key point is that the pay or salary is
22   compensation for work, and the regular rate must therefore be
23   calculated by dividing all compensation paid for a particular week
24   by the number of hours worked in that week." The Court of Appeals,
25   then, continued to endorse Reich v. Interstate Brands Corp., 57
26   F.3d 574, 577 (7th Cir. 1995) cert. denied, 516 U.S. 1042 (1996),

1 for the proposition that, "Even if payments to employees are not

2 measured by the number of hours spent at work, that fact alone does

3 not qualify them for exclusion under section 207(e)(2)." Id. at 297

4 n.2.

5      In Reich, the Seventh Circuit considered whether a $12 credit

6 paid to bakers who worked a schedule that did not include two

7 consecutive days off is included in the regular rate of pay. 57

8 F.3d at 574. The court rejected the bakery's interpretation of

9 Section 207(e)(2) to exclude any payments "not measured by the

10 number of hours spent at work." Id. at 577. The Circuit cautioned

11 that such an interpretation of the Subsection would allow employers

12 to "evade the overtime requirements with ease." Id. After an

13 exhaustive analysis of the Subsection, the Seventh Circuit

14 concluded that, "The word 'similar' then refers to other payments

15 that do not depend at all on when or how much work is performed.

16 An extra payment made because the workplace is unpleasant, or the

17 hours irregular, is no different in principle from a higher base

18 rate compensating the employee for smelly or risky tasks, foul-

19 tempered supervisors, or inability to take consecutive days off."

20 Id. at 578-79.

21      For this reason, defendant's reliance on the Third Circuit

22 opinion, Minizza v. Stone Container Corp., 842 F.2d 1456 (3rd Cir.

23 1988), is misplaced. The Third Circuit in Minizza determined that

24 two one-time lump sum amounts paid to the members of a bargaining

25 unit pursuant to contract settlement terms were properly excluded

26 from the regular rate as "other similar payments" in 207(e)(2).

12

1   Minizza, 842 F.2d at 1462. The trial court in <u>Minizza</u> had found

2   that the payments were not excluded under this provision because

3   they were not "similar" to the other two categories in 207(e)(2).

4   The Third Circuit rejected this finding, holding that the payments

5   were similar because the enumerated categories of payment were,

6   like the lump sums, not compensation "for hours of employment."

7   Rather than compensation for their work, the Third Circuit found

8   that the lump sums were an incentive for members to ratify the

9   contract and, thus, should not be included in calculation of the

10  regular rate of pay. <u>Id.</u> at 1461-62.

11      Defendants here contend that the tuition reimbursements are

12  excludable following <u>Minizza</u> because they are not compensation for

13  hours of employment. They take the approach that if an employee is

14  not provided X in tuition benefits for every hour worked, that the

15  tuition payments are excludable under Subsection (e)(2). That is

16  simply not the case, nor does it appear to be the holding of

17  <u>Minizza</u>. In <u>Reich</u>, the Seventh Circuit case explicitly endorsed by

18  the Ninth Circuit, the court rejected such an interpretation of

19  <u>Minizza</u>. It reasoned,

20          But we hesitate to read § 7(e)(2) as a catch-all, one
            that obliterates the qualifications and limitations on
21          the other Subsections and establishes a principle that
            all lump-sum payments fall outside the "regular rate,"
22          for then most of the remaining Subsections become
            superfluous. <u>Minizza</u> does not treat them so. Union and
23          employer resolved a dispute with an agreement to make
            two lump-sum payments. The third circuit treated these
24          payments as equivalent to sums received in litigation
            rather than as compensation for work; this conclusion
25          does not imply that all lump-sum payments negotiated in
            the collective bargaining process are excluded from the
26          "regular rate."

1
2    <u>Reich</u>, 57 F.3d at 578.

3         Further, it is well settled that a payment constituting part
4    of the regular rate need not be "directly attributable to any
5    particular hours of work." 29 C.F.R. 778.224; Featsent v. City of
6    Youngstown, 700 F.3d 900, 904 (6th Cir. 1995) ("Section 7(e)(2)does
7    not exclude every payment not measured by hours of employment from
8    the regular rate."); <u>Acton v. City of Colombia</u>, 436 F.3d 969, 976
9    (8th Cir. 2006) ("[T]he language . . . posited in § 207(e) is but
10   a mere re-articulation of the 'remuneration for employment' set
11   forth in the preambulary language of § 207(e).").

12        Defendants also cite to <u>Ballaris v. Wacker</u>, 370 F.3d 901 (9th
13   Cir. 2004), in support of their interpretation of Subsection
14   (e)(2). In <u>Ballaris</u>, the Ninth Circuit found that defendant's half-
15   hour paid lunch periods were excludable from the regular rate. <u>Id.</u>
16   at 909. Specifically, the court recognized that, "[T]he parties
17   treated the half-hour paid lunch period as non-working time." <u>Id.</u>
18   Thus, the Circuit "conclude[d] that the payments for the lunch
19   periods constituted an additional benefit for employees and not
20   compensation for hours worked." <u>Id.</u> <u>Ballaris</u> is distinguishable
21   from the case at bar. Under Subsection (e)(2), similar payments to
22   those "made for occasional periods when no work is performed due
23   to vacation, holiday, illness, failure of the employer to provide
24   sufficient work, or other similar cause" are excludable. In
25   <u>Ballaris</u>, no work was performed during the lunch periods. Thus, the
26   Circuit reasonably concluded that the lunchtime payments were

                                    14

1  excludable. Here, however, the tuition benefit is not a payment
2  made for a period where no work is performed. Rather, if a tuition
3  benefit is a similar payment under the Subsection it must be
4  similar to "reasonable payments for traveling expenses, or other
5  expenses, incurred by an employee in the furtherance of his
6  employer's interests and properly reimbursable by the employer."
7  Thus, <u>Ballaris</u> provides no guidance on the question before this
8  court.

9       After consideration of the case interpreting the Subsection,
10  the court concludes that when determining whether a payment
11  qualifies as an "other similar payment" under Subsection (e)(2),
12  the court must determine whether the payment was compensation for
13  work, as opposed to benefits like vacation time, in which an
14  employee is paid for time when he does not work, and reimbursement
15  of employment related expenses, in which the employee is receiving
16  payment for costs he has incurred and not for work done.

17              **2.  DOL Regulations**

18       Where the Department of Labor ("DOL") provides relevant
19  interpretative guidance on the FSLA through its regulations, such
20  interpretation is entitled to great deference. <u>Imada v. City of</u>
21  <u>Hercules</u>, F.3d 1294, 1297 (9th Cir. 1998). Here, tuition benefits
22  are not explicitly identified in the exemptions to the regular
23  rate. Rather, the court must determine whether they should be
24  considered an "other similar payment." Thus, any regulations
25  interpreting this statutory language are highly persuasive.

26       The regulation interpreting 29 U.S.C. § 207(e), 29 C.F.R. §

778.116, states that payments other than cash, such as those in the form of "goods or facilities," must be included in the regular rate, when regarded as part of wages.[2] The section does not provide guidance in how to distinguish a payment that is "regarded as part of wages" from one that is not. It does, however, provide a cross reference to section 531.32, which enumerates some non-cash payments that may be considered part of "wages." Section 531.32 in turn lists examples of such "facilities." The list includes meals, dormitory rooms, merchandise and "tuition furnished by a college to its student employees." 29 C.F.R. § 531.32(a). Section 531.32 also clarifies that facilities which are primarily for the benefit or convenience of the employer need not be included in computing wages. 29 C.F.R. § 531.32(c). Such facilities include things such as safety equipment, uniform rental, and transportation charges, when transportation is necessary for employment. Id. Likewise, the Section notes that "meals are always regarded as primarily for the benefit and convenience of the employee." Id. Accordingly, the regulation strongly suggests that facilities that are regarded as primarily for the benefit and convenience of the employee must be included in the calculation of the regular rate.[3]

---

[2] The parties engage in a debate as to when class representative Abbaszadeh became aware of UOP's tuition benefit. There is no basis for such a subjective test to determine whether a particular payment is regarded as a wage. Rather, as discussed in the previous section, the question is whether a payment was made as compensation for work, and the language regarded as wages should be interpreted as regarded as compensation for work.

[3] 29 C.F.R. § 531.32 has not been amended since the issuance of the DOL letter discussed in the following section.

### 3.   1994 DOL Opinion Letter

In the past, the Department of Labor Administrator periodically issued interpretations of the FSLA and regulations though opinion letters. <u>Cash v. Conn Appliances, Inc.</u>, 2 F. Supp. 2d 884, 890 (E.D. Tex. 1997). The opinion letters are responses to fact-specific requests for advisory opinions from individuals or organizations. Though limited in their application, the agency's interpretation of its own regulations through these letters is given "a high degree of deference" unless plainly erroneous or inconsistent with the regulation. <u>Imada,</u> 138 F.3d at 1297.

In 1994, the Deputy Assistant Administrator of the Department of Labor ("Administrator") issued an opinion letter in response to a request from an employer about its tuition reimbursement program. The Administrator opined that the tuition reimbursement payments may be excluded from the regular rate under Subsection (e)(2). He noted that the letter was based "exclusively on the facts and circumstances described" in the employers' request, and that existence of additional facts might require a different outcome. Op. Letter, 1994 WL 1004844 (DOL Wage Hour Div. June 28, 1994). Unfortunately, his description of these facts was limited.

The Administrator addressed whether an employer school district that provides tuition reimbursement in the amount of $60.00 per semester hour at external institutions, in order to encourage employees to continue their education, must include that reimbursement in the regular rate of pay. Course work reimbursed through the program "1) may or may not be related to [the

17

employee's] work (but it usually does)[sic], (2) includes communications and language skills, and (3) can qualify a nonexempt employee for a future upgrade or promotion." Id. Ultimately, the Administrator concluded that the reimbursement need not be included in the regular rate of pay. He provided only limited reasoning for his opinion:

> These payments, unlike a bonus offered as an incentive for performance or attendance on a job, are not made for hours included in the employees' regular hours of work. They serve to reimburse employees, who are acquiring knowledge that will be of mutual benefit to them and the employer, for the value which inures to the employer from the employees giving up a portion of their own time for the purpose.

Id.

To the extent that the 1994 opinion letter conflicts with the DOL's regulations or with the FSLA, the regulations and statute are determinative. Imada, 138 F.3d at 1297. The Administrator explicitly stated that his reasoning is limited to the specific facts described. This acknowledgment further limits the amount of deference the letter warrants as an interpretation of the regulations and statute which have general applicability. See Long Island Care At Home, LTD v. Coke, 551 U.S. 158, 172 (2007) (finding that the DOL's intention regarding the applicability of a particular regulation was relevant to a determination of the deference owed by the courts).[4]

---

[4] Notably, the Department has since abandoned the practice of issuing these limited opinion letters, in favor of providing general interpretations of the regulations when warranted. See United States Department of Labor, Wage and Hour Division, Final

1    The Administrator did not make clear which facts he found

2  dispositive of this issue in the opinion letter, however several

3  facts distinguish the school district's tuition benefit from the

4  tuition benefit that section 531.32(a) of the regulations requires

5  be included in the regular rate. In particular, the Administrator

6  explicitly found that the school district's tuition program

7  conferred "mutual benefit" upon the employer in addition to the

8  employee. Op. Letter, 1994 WL 1004844. He, perhaps, appears to

9  focus on whether the payment is provided as remuneration in

10  exchange for employee work or for reimbursement for education

11  obtained for the purpose of the employers' benefit. This logic may

12  explain the Administrator's reliance on Subsection 207(e)(2), which

13  excludes "reasonable payments for . . . expenses incurred by an

14  employee in the furtherance of his employer's interests . . . ; and

15  other similar payments to an employee which are not made as

16  compensation for his hours of employment." 29 U.S.C. 207(e)(2). No

17  such benefit to the employer is specified in 29 C.F.R. §

18  531.32(a), which addresses the rate of pay for a college's student

19  employees.

20    Furthermore, the Administrator's conclusion that the payments

21  benefit the school district may be based on the employer's

22  restrictions on the type of course work reimbursed, the fact that

23  most of the reimbursed courses are related to the employees' work,

24  and the fact such course work includes "workshops, seminars, etc.,

25  _____

26  Rulings  and  Opinion  Letters  (Feb.  08,  2011)
http://www.dol.gov/whd/opinion/opinion.htm.

1   taken through the Department of Education and the Curriculum
2   Council." Op. Letter, 1994 WL 1004844 (ellipses omitted).

3       Ultimately, however, the court must interpret the letter so
4   that it does not conflict with Local 246, the FLSA, and its
5   regulations. To the extent it does conflict with the Ninth
6   Circuit's interpretation of Subsection (e)(2) or the regulations,
7   it is clearly erroneous. For this reason, the court concludes that
8   the letter bears little weight on determination of whether UOP's
9   tuition benefit is excludable from the regular rate of pay. One
10  cannot determine whether the school district's program applied, in
11  practice or by its own terms, to tailored training programs or to
12  general education programs. This distinction is determinative as
13  to whether a tuition payment program is compensation for work
14  versus reimbursement for enrollment in a program that primarily
15  benefits the employer.

16      The DOL regulations support this distinction and the
17  conclusion that at least some tuition reimbursement programs must
18  be included in the regular rate of pay. As discussed above, the
19  FSLA authorizes only the narrowly construed, enumerated exceptions
20  of Section 207(e). Cleveland v. City of Los Angeles, 420 F.3d at
21  1988. Section 778.217 of the regulations explains that, Subsection
22  (e)(2) permits exclusion of certain expenses incurred for the
23  convenience of the employer. Examples include "supper money" for
24  a day shift employee when the employer requests that he or she
25  continue working into the evening, and expenses for traveling "over
26  the road" on the employer's business. 29 C.F.R. § 778.217(b).

However, reimbursement for expenses that are normally incurred by the employee "of course, increas[e] the employee's pay," and must be included in the regular rate. 29 C.F.R. § 778.217(b),(d). These included payments include those which arguably confer benefit on the employer under some circumstances, such as "traveling to and from work," and "buying lunch." 29 C.F.R. § 778.217(d).

Thus, tuition payments for course work that primarily or exclusively benefits the employer is excludable as an "other similar payment." However, tuition payments for course work that the employee would normally incur or which are primarily for the benefit or convenience of the employee must be included in the regular rate of pay. The DOL letter does not provide sufficient information from which the court can determine where the agency draws the line between a payment that primarily benefits the employer versus one that primarily benefits the employee. Without further information about the administration of the tuition benefit at issue in the DOL letter, the letter can provide only minimal guidance as to how courts should evaluate whether a particular tuition benefit must be included in the regular rate of pay. Suffice to say, the language of the letter does not contradict this court's understanding of the statute and regulations at issue in the instant case. The proper test for determining whether a payment must be included in the regular rate is whether such a payment is compensation for work. One determines whether a payment is compensation for work by considering whether the benefit primarily benefits the employee or the employer.

1          **4.   Application**

2          The question under Subsection (e)(2) is whether UOP's tuition

3   benefit constitutes compensation for work or whether it is an

4   expense incurred on behalf of the employer. For the reasons

5   described above, a tuition benefit is not compensation for work,

6   and may thus be excluded from the regular rate of pay, where it

7   primarily benefits the employer. Here, employees may not utilize

8   the tuition benefit unless they receive a score of 100% or greater

9   on a certain computer based training course and have not received

10  any written warnings or disciplinary actions. Defendants admit

11  that they regard the program as a privilege and benefit to the

12  employees. <u>See</u> Id. Ex. 1. at 3; Defendants' Motion, Doc. No. 113,

13  at 1 (Jan. 14, 2011). This admission does not, however, resolve the

14  dispute. Rather, the court must examine UOP's program to determine

15  whether it primarily benefits the employer or the employee. As

16  discussed above, UOP's program gives ECs and their dependants

17  credit to enroll in UOP and other Apollo courses without any

18  restrictions on the courses selected. It also will reimburse

19  coursework taken at external institutions by the ECs only, but such

20  reimbursement is subject to several conditions. The court

21  separately discusses each program.

22          **a.   Internal Program**

23          The essential elements of the internal program are as follows:

24  (1) ECs are given a 100% credit to take any courses offered by UOP

25  and other Apollo entities and (2) dependents of ECs are given a 80%

26  credit to take any courses offered by UOP and other Apollo

1  entities. UOP argues that this policy benefits them because the ECs

2  will be able to better communicate to potential students about the

3  classes it offers. It seems quite clear that UOP derives little,

4  if any, benefit from the credit provided to the dependants of ECs.

5  Defendants have not provided any evidence to the contrary. Thus,

6  this element of the internal program primarily benefits the

7  employee, and is not excludable from the regular rate of pay under

8  Subsection (e)(2).

9      The credit provided to ECs is a more difficult question. UOP

10  does derive some benefit from the program in that its counselors

11  may be better able to provide information to students if they are

12  also taking courses with the university. The question, however, is

13  whether the program primarily benefits the employer or the

14  employee. Both defendants' admission that they regard the program

15  as a benefit of employment and that UOP requires that the employees

16  meet certain performance-based thresholds before they can utilize

17  the program does suggest that the benefit primarily benefits the

18  employee. Further, through the program, employees can earn credits

19  towards a degree, take courses in any subject area, and

20  potentially, increase their earning potential by doing so.

21  Ultimately, the benefit to the employee appears to outweigh that

22  to the employer and, thus, the internal benefit is not excludable

23  from the regular rate of pay.

24      It is important to note that this finding is consistent with

25  the policies underlying the FLSA. The regular rate must include all

26  remuneration unless specifically exempted. 29 U.S.C. § 207(e).

1  Exemptions to employers' responsibilities under the FSLA are
2  narrowly construed so that employees are reiumbursed for their
3  work. <u>Cleveland v. City of Los Angeles</u>, 420 F.3d at 1988. If the
4  court were to adopt defendants' interpretation of "other similar
5  payments," employers would be able to avoid including nearly any
6  benefit from the regular rate of pay. Specifically, employers
7  generally receive some advantage from any benefit that they offer
8  their employees. This advantage could be morale, retention, ability
9  to pay a lower monetary wage, or, like here, potential improvement
10 in quality of employee work. In fact, the court suspects that an
11 employer could always come up with an explanation as to why an
12 employee benefit actually benefits the employer. Thereby, allowing
13 employers to exclude any benefit from the regular rate of pay if
14 such benefit also benefits the employer would swallow the rule. No
15 specific exemptions would be necessary because everything would be
16 exempted. For this reason, the focus of the court's analysis must
17 be whether the employer or the employee **primarily** benefits from the
18 tuition program.[5]

19  _____

20  [5] Defendants also argue that the tuition benefit should be
    excludable because it is similar to a health insurance benefit,
21  which is excludable from the regular rate of pay. While the tuition
    benefit may be similar to the health insurance benefit, any such
22  similarities actually weigh in favor of inclusion of the tuition
    benefit in the regular rate of pay. Subsection (e)(4) of the
23  statute explicitly provides that employers may exclude health
    insurance benefits and other such insurance benefits from the
24  regular rate of pay. This explicit exemption strongly suggests that
    absent the exemption, health insurance benefits would be included
25  and would not constitute a similar payment under Subsection (e)(2).
    Further, the regulations interpreting Subsection (e)(4) prevent
26  inclusion of the tuition benefit under the Subsection. In 29 C.F.R.
    § 778.215, the DOL limits inclusion under the section to benefit

**b.   External Program**

The court is presented with only minimal evidence concerning the external tuition benefit. Specifically, ECs may only receive tuition reimbursement for course work taken at non-Apollo institutions where the course is not offered by any Apollo subsidiary, will improve the employee's current job/professional responsibilities, and is approved by the president of Apollo. Neither party has presented any evidence as to how this program is implemented or what standards are used to determine whether a course will improve any employee's job/professional responsibilities and by the president of Apollo. Under these circumstances, the court cannot make a determination as to whether the external benefit primarily benefits the employer or the employee. Thus, both motions are denied as to the external benefit.[6]

**D.   Whether the Internal Tuition Payments Should Nonetheless Be Excluded as De Minimus**

_____

plans whose "primary purpose . . . must be to provide systematically for the payment of benefits to employees on account of death, disability, advanced age, retirement, illness, medical expenses, hospitalization, and the like." Tuition reimbursement simply is not like these other sorts of benefits.

[6] It appears to the court that few if any class members would ever have had an opportunity to utilize the external tuition benefit. UOP offers a vast number of courses, making it unlikely that a course would not be offered at an Apollo institution. This seems to be especially so for courses that will benefit an EC's job performance. For this reason, it may be that this court will not need to determine whether the external benefit need be included in the regular rate. This question may likely be resolved by an interrogatory on whether any class members utilized the external program.

1      Defendant argues that even if the tuition benefit is not
2  excluded as an "other similar payment," it must nonetheless be
3  excluded as de minimus. 29 C.F.R. § 548.305 permits an employer to
4  exclude "additional payments in cash or kind, which if included in
5  the computation of overtime under the Act, would not increase the
6  total compensation of the employee by more than 50 cents a week."
7  The cost applicable to payments in the form of goods or facilities,
8  under 29 C.F.R. § 778.116, is the "reasonable cost to the employer
9  or fair value of such goods." Defendant argues that the cost of the
10 tuition benefit is de minimus because UOP would offer the classes
11 in which the ECs enrolled regardless of whether the benefit were
12 in place. Thus, they contend, that the cost of the program is
13 insignificant and, under § 548.305, excludable from the regular
14 rate of pay.

15      In order to calculate the reasonable cost, the court must
16 calculate the cost of operation, maintenance, and the rate of
17 depreciation under good accounting practices. 29 C.F.R. § 531.3.
18 If this amount is more than the fair value of the commodity, the
19 value is its fair value. The only evidence defendants submit on
20 this issue is a declaration from an Apollo Group
21 curriculum/advertising accounting manager, in which he testifies
22 that UOP's operational costs are fixed and would have been incurred
23 whether or not the class members enrolled in courses through their
24 tuition benefit. He further declares that the total cost to UOP for
25 Abbaszadeh's three courses was $54.37 in electronic course content.
26 Abbaszadeh had paid a $45 fee for such material in each of her

courses, and thus, UOP incurred no costs for her classes. Additionally, the accounting manager represented that Abbazadeh's experiences were common among ECs utilizing the tuition benefit.

In response, plaintiffs argue that defendants' evidence is insufficient. Plaintiffs contend that the DOL regulations preclude a finding that tuition benefits are di minimus. Specifically, plaintiffs maintain that the regulation requiring "tuition furnished by a college to its student employees" to be included in their regular rate of pay would be meaningless if each college could then turn around and argue that such benefits are di minimus. Such is not the case. Rather, a fact specific inquiry is necessary to determine if the cost to the employer is di minimus. For example, in addition to the varying costs of lab equipment, limited seats, and course material, many universities and colleges spend far more funds on a student's education than they charge in tuition. Thus, UOP's di minimus argument is not in conflict with the regulations.

Alternatively, plaintiffs have filed a Rule 56(f) motion, which was incorrectly identified as a Rule 56(d) motion, in which they contend that further discovery is necessary before they can adequately oppose defendants' motion on this ground. The court finds that plaintiffs are entitled to discovery on the reasonable costs incurred by defendants from the internal tuition benefit on a class-wide basis. All relevant information is in the possession of the defendants and plaintiffs have no meaningful way to oppose defendants' motion on this ground. Thus, both motions for summary

1 | judgment are denied without prejudice  and plaintiffs' Rule 56(f)
2 | motion is granted as to allow discovery of the costs of the
3 | internal tuition benefit.
4 | **IV.  CONCLUSION**
5 | For the foregoing reasons the court HEREBY ORDERS as follows:
6 | (1)  Plaintiffs' Rule 56(f) motion (Doc. No. 115) is GRANTED
7 | as to allow discovery of the reasonable cost of the ECs'
8 | tuition benefit when utilized through defendants'
9 | internal educational programs.
10 | (2)  Both motions for summary judgment (Doc. Nos. 112, 113)
11 | are DENIED WITHOUT PREJUDICE.
12 | IT IS SO ORDERED.
13 | DATED:  March 10, 2011.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT