MICHAEL L. TRACY, ESQ., SBN 237779
MTRACY@MICHAELTRACYLAW.COM
LAW OFFICES OF MICHAEL TRACY
2030 Main Street, Suite 1300
Irvine, CA 92614
T: (949) 260-9171
F: (866) 365-3051

Attorneys for Plaintiff DIANE ADOMA

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| DIANE ADOMA, *et al.* | Case No.: 2:10-cv-00059-LKK-GGH |
| Plaintiff, | **NOTICE OF MOTION AND JOINT MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND PRELIMINARY APPROVAL OF SETTLEMENT** |
| vs. | |
| THE UNIVERSITY OF PHOENIX, INC. , *et al.*, | Hearing Date: May 21, 2012 Time: 10:00a.m. Ctrm: 4 Judge: Hon. Lawrence K. Karlton |
| Defendants. | Date Filed: January 8, 2010 Trial Date: June 12, 2012 |

**TO DEFENDANT THE UNIVERSITY OF PHOENIX, INC. AND DEFENDANT APOLLO GROUP, INC. AND THEIR ATTORNEY OF RECORD:**

PLEASE TAKE NOTICE that on May 21, 2012 at 10:00 a.m., or as soon thereafter as counsel may be heard in Department 4 of the above-entitled Court, Plaintiffs DIANE ADOMA and MICHELLE ABBASZADEH and Defendants THE UNIVERSITY OF PHOENIX, INC. and APOLLO GROUP, INC. will and hereby do move this Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), for preliminary approval of the settlement ("Settlement") and certification of a conditional settlement class as set forth in the Stipulation and Agreement of Settlement ("Settlement Stipulation") between Plaintiffs and Defendants, attached hereto as Exh. A.

This motion is based upon this Notice of Motion, the accompanying Motion, the accompanying Memorandum of Points and Authorities, the papers and records on file with this Court, and other such oral and documentary evidence as may be presented to the Court at or prior to the hearing on the Motion.

DATED:  April 16, 2012          LAW OFFICES OF MICHAEL TRACY
                                                      /s/ Michael Tracy
                                            By_____
                                            MICHAEL TRACY, Class Counsel

JOINT MOTION FOR CERTIFICATION OF SETTLEMENT CLASS

1
2
<u>**Table of Contents**</u>

3
**I.   INTRODUCTION** ...............................................................................**1**

4
**II.  Procedural and Factual Background** ..................................................**2**

5
   **A. Parties** ............................................................................................**2**

6
   **B. Essential Factual Allegations and Denials** .................................**2**

7
8
   **C. Prior law and motion** ..................................................................**3**

9
   **D. Mediation and Settlement** ..........................................................**6**

10
**III. SUMMARY OF SETTLEMENT TERMS** ......................................**6**

11
   **A. Class Definitions** .........................................................................**6**

12
13
   **B. Essential Terms** ...........................................................................**7**

14
**IV. Legal Argument** .................................................................................**8**

15
   **A. Steps in the Settlement Approval Process** .................................**8**

16
   **B. Fairness of Settlement** ...............................................................**10**

17
18
    **1. The settlement amount represents a realistic resolution given the strength of the claims, risk of loss, and the complexity of the litigation.** .... **11**

19
20
    **2. The use of a "claims made" provision in the Settlement is fair given the nature of the Fair Labor Standards Act opt-in requirement.** ...................... **13**

21
22
**V.  CONCLUSION** .................................................................................**13**

23
24
25
26
27
28

JOINT MOTION FOR CERTIFICATION OF SETTLEMENT CLASS

1

2 <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

3 **I.    INTRODUCTION**

4       Plaintiffs DIANE ADOMA and MICHELLE ABBASZADEH ("Plaintiffs")

5 sued Defendants The University Of Phoenix, Inc. and Apollo Group, Inc.

6 ("Defendants"), on behalf of themselves and approximately 1,612 other employees,

7 with claims for unpaid overtime wages seek to settle their existing class action

8 claims.

9       The currently certified class involves Enrollment Counselors who worked in

10 California as hourly employees for the University of Phoenix that allege that (1) they

11 were required to work "off-the-clock," (2) their overtime that was paid was not

12 computed properly because it did not include the value of tuition benefits received,

13 (3) they were not provided proper meal breaks, and (4) various penalties related to

14 the above claims.

15       After extensive law and motion, discovery, and mediation, the parties have

16 reached a settlement, subject to Court approval, for $4,000,000, exclusive of any

17 employer paid payroll taxes.  In addition to the existing certified class, the parties

18 also wish to settle claims after the date of initial certification, and wish to resolve any

19 and all claims that were asserted, or could have been asserted, based on the

20 allegations in the various complaints, as well as claims under the Fair Labor

21 Standards Act (FLSA) that were asserted in this action and then severed and

22 transferred to the Eastern District of Pennsylvania.  Individuals who submit claims

23 will be opting into the FLSA claims.

24       The proposed settlement satisfies all the criteria for preliminary approval

25 under Rule 23 of the Federal Rules of Civil Procedure, and is reasonable and fair.

26 Accordingly the parties move this Court for an order (1) certifying the class for

27 settlement purposes only (which includes approving the plaintiffs and their counsel

28 as class representatives), (2) granting Preliminary Approval of the Joint Stipulation

of Settlement and Release (the "Settlement Agreement"), (3) preliminarily enjoining the settlement class members from bringing any claims to be released by the settlement, (4) approving the proposed notice to the settlement class and claim form, (5) approving the appointment of Simpluris, Inc. as settlement administrator, and (6) setting a schedule for the mailing of class notice, the submission of claims, and final approval of the settlement.

Plaintiffs and Defendants have executed the Agreement after considerable, arms-length settlement discussions and believe the terms of the settlement to be fair, reasonable, and adequate.

Plaintiffs submit concurrently with these papers a proposed Order granting preliminary approval to this Settlement, as well as a proposed Notice to putative Class members, and a copy of the Agreement. (See Decl. Tracy, Exhibit A, proposed Notice to putative Class members; Exhibit B, a copy of the Agreement in this action).

## II.   Procedural and Factual Background

### A.   Parties

Defendant The University Of Phoenix, Inc. ("UOP") is a private, for profit educational institution that offers classes at 362 independent campuses throughout the United States, and through online programs.  Defendant Apollo Group, Inc. ("Apollo") is the parent company of UOP and handles all of the administrative functions relating to payroll.  UOP is a wholly owned subsidiary of Apollo.

Plaintiffs Diane Adoma and Michelle Abbaszadeh worked as Enrollment Counselors for Defendants in California.  Ms. Adoma was employed by Defendants from September 2007 through November 2009.  Ms. Abbaszadeh was employed by Defendants from September 2009 through March 2010.

### B.   Essential Factual Allegations and Denials

Plaintiffs claim that they worked as Enrollment counselors for UOP and were required to work "off-the-clock."  Plaintiffs contend that they used a telephone

1  system that recorded the time and date of all calls made and received and that records

2  of these phone calls could be used to establish their off-the-clock claims.  Plaintiffs

3  also allege that the value of any tuition benefits received should have been included

4  in the regular rate of pay on which overtime was worked.  Plaintiffs also contend that

5  they were not permitted to take required meal breaks.

6         Defendants deny all of the allegations and contend that the Enrollment

7  Counselors regularly reported and were paid overtime.  Defendants contend that all

8  overtime was required to be recorded and paid for and cite the large amount of

9  overtime that has paid to the Enrollment Counselors each and every pay period.

10  Defendants also deny that any additional compensation is due for tuition benefits and

11  deny that meal breaks were not provided.

12         **C.    Prior law and motion**

13         This case concerns alleged wage and hour violations by Defendants.  Plaintiff

14  Diane Adoma filed the original complaint in this action on January 8, 2010, on

15  behalf of herself and others similarly situated, with claims for unpaid overtime wages

16  under both California law and the Fair Labor Standards Act ("FLSA"), together with

17  claims for meal break, pay stub, and waiting time violations, as well as individual

18  actions for retaliation and failure to produce records.

19         Ms. Adoma was not the first employee of Defendants to seek a judicial remedy

20  for alleged overtime violations.  On April 3, 2009 plaintiff Dejan Juric filed a class

21  and collective action complaint for unpaid overtime against UOP and Apollo in the

22  Superior Court for the State of California for the County of Los Angeles, which

23  Defendants removed to the Central District of California on May 7, 2009. *Juric v.*

24  *The University of Phoenix*, Inc., No. 09-CV-3214 ODW (C.D. Cal.)  ("*Juric*").

25  However, the parties in that action reached a settlement that pertained only to the

26  named plaintiff and Defendants, and the case was dismissed on June 21, 2010.  No

27  class or collective action was certified in that case.

28

1    A similar action for unpaid overtime was also filed against Defendants in the

2  state of Pennsylvania.  On July 30, 2009, plaintiffs Erik M. Sabol and Rebecca Odom

3  filed a complaint against Defendants in the Eastern District of Pennsylvania, on

4  behalf of all academic and Enrollment Counselors employed by Defendants.  *Sabol*

5  *v. The University of Phoenix*, No. CV 09-03439-JCJ (E.D. Pa.) ("*Sabol*").  The

6  Pennsylvania action includes overtime claims against Defendants under the FLSA.

7    In light of the claims brought in the *Sabol* and *Juric* cases, Defendants filed a

8  motion on March 4, 2010 to dismiss the present action under the first-to-file rule, or

9  in the alternative to stay and/or transfer the claim.  As a tentative settlement

10  agreement had been reached in *Juric* prior to this Court ruling on Defendants'

11  motion, the Court's analysis was primarily concerned with the competing claims

12  filed in Pennsylvania by plaintiffs in *Sabol*.

13    On May 3, 2010, this Court denied Defendants' motion to dismiss the present

14  action under the first-to-file rule, or in the alternative to stay and/or transfer the

15  claim.  The Court noted that, at the time of the ruling, the *Sabol* case had not

16  advanced even to certification.  In addition, the Court reasoned that Ms. Adoma had

17  brought unique theories of recovery, and the relief she sought under California state

18  law required different calculations for overtime compensation.  Under the totality of

19  the circumstances, the Court found that the first-to-file rule should not be applied in

20  this case.

21    Ms. Adoma subsequently brought motions seeking to:

22        (1) Amend her complaint and add Michelle Abbaszadeh as a named

23        Plaintiff;

24        (2) Certify a collective action under section 16(b) of the FLSA, 29

25        U.S.C. § 216(b), with regard to Plaintiffs' FLSA claims; and

26        (3) Certify three classes under Fed. R. Civ. P. 23(b)(1) or (b)(3) with

27        regard to Plaintiffs' state law claims.

28  The Court responded to these motions on August 13, 2010 by:

(1) Granting Plaintiff leave to amend, and approving the First Amended Complaint;

(2) Transferring Plaintiffs' FLSA claims to the Eastern District of Pennsylvania, in light of *Sabol* and the first-to-file rule, and noting that a nationwide collective action had since been certified in *Sabol*, and that the claims in that case were broader than originally thought by this Court; and

(3) Ordering Plaintiffs to show cause as to why subject matter jurisdiction exists over the remaining claims in this suit, all of which arise under state law.

After reviewing Plaintiffs' subsequent arguments regarding subject matter jurisdiction, this Court ruled on August 31, 2010 that it has jurisdiction over Plaintiffs' state law claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The Court further granted Plaintiffs' motion for class certification pursuant to Fed. R. Civ. P. 23(b)(3), approving following four classes:

1.   All current or former Enrollment Counselors[1] who worked at least one week in the State of California for either The University of Phoenix, Inc. or Apollo Group, Inc. at any time between April 5, 2005 and August 13, 2010.(**"California Overtime Class"**) and (**"California Meal Break Class"**) and;

2.   All current or former Enrollment Counselors who received at least one paycheck statement for work performed in the State of California for either The University of Phoenix, Inc. or Apollo Group, Inc. at any time

---

[1] The term "Enrollment Counselors" includes employees with the job title of "enrollment counselor" as well as any other nonexempt employee who utilized the Avaya phone system's Automatic Call Distribution system to receive calls relating to enrollment.

between April 5, 2008 and August 13, 2010. (**"California Paystub Class"**) and;

3.    All current or former Enrollment Counselors who worked at least one week in the State of California for either The University of Phoenix, Inc. or Apollo Group, Inc. at any time between April 5, 2006 and August 13, 2010 whose employment ended at least once during that same time period. This class includes current employees who worked during the covered time period, ceased working, and then began employment again. (**"California Waiting Time Class."**)

On October 29, 2010, Plaintiffs Adoma and Abbaszadeh filed their Second Amended Complaint (removing their FLSA claims), on behalf of themselves and the Classes identified above, which Defendants answered on November 12, 2010.

**D.    Mediation and Settlement**

On July 21, 2011, the parties engaged in mediation before Mark Rudy, a mediator experienced with wage and hour class actions.  (Decl. Tracy ¶4).  At the mediation, the parties made progress towards a framework for settlement but did not actually reach a settlement.

Shortly after the mediation, Mark Rudy made a "mediator's proposal" to resolve the case.  The parties accepted the general framework of the proposal with the details to be worked out, largely pending the resolution of the *Sabol* case.

The parties then came to a final agreement in February 2012 to resolve the case.  A copy of the Settlement Agreement is attached as Exhibit B to the Decl. of Michael Tracy.

# III.    SUMMARY OF SETTLEMENT TERMS

. The essential terms of the Settlement are summarized here:

**A.    Class Definitions**

JOINT MOTION FOR CERTIFICATION OF SETTLEMENT CLASS

The class is defined as: (a) all current and former Enrollment Counselors in California who were previously sent a class notice in the above-captioned case, but who did not opt out of the class; (b) all Enrollment Counselors in California hired from August 13, 2010 to and including the Preliminary Approval Date ("Interim Class Members") who were not previously sent a class notice; (c) all Enrollment Counselors in California who originally opted into the action entitled *Sabol, et al., v. Apollo Group, Inc., et al.*, United States District Court, Eastern District of Pennsylvania, Civil Action No. 2:09-cv-03439-JCJ, ("*Sabol*") and who subsequently excluded themselves from the *Sabol* settlement; and (d) one individual (Angelica Michelle Lee) who has communicated to Class Counsel her intent to opt in to the Pennsylvania Action. "Class" shall exclude all Enrollment Counselors in California who opted into *Sabol* but who did not exclude themselves from the *Sabol* settlement.

### B. Essential Terms

A maximum settlement in the amount of $4 million will be distributed on a claims-made, partial-reversionary basis. This sum includes payments to the class, attorney's fees, service fees of $5,000 to each class representative, a $20,000 additional settlement payment to Ms. Adoma for her individual claims, Plaintiffs' reasonable litigation expenses, costs of administration, PAGA penalties, interest and taxes. The Defendants' corporate FICA and FUTA obligation shall be paid separately and in addition to the gross settlement amount.

The settlement amount will be distributed to Class members on a prorated basis based on the number of work weeks worked by each Class Member. The formula is as follows:

$$\frac{Total\ Settlement\ Pool\ \$\$}{Total\ Weeks\ Worked\ by\ all\ Class\ Members} \times Weeks\ worked\ by\ Individual\ Class\ Member$$

JOINT MOTION FOR CERTIFICATION OF SETTLEMENT CLASS

1  In addition, if less than 50% of the Settlement Pool is not claimed by Class

2  Members, then the payments to Class Members who submit claims will be increased

3  proportionately so that 50% of the Settlement Pool will be paid out.

4  Pursuant to the Settlement Agreement, Defendants have agreed not to oppose a

5  request for attorney's fees not to exceed 33 1/3% of the gross settlement, a payment

6  to the class representatives Ms. Adoma and Ms. Abbaszadeh, each not to exceed

7  $5,000 service payment, as well as reimbursement of reasonable litigation expenses

8  not to exceed $25,000.  Moreover, the Settlement also includes a payment of $50,000

9  to the State of California for the Private Attorneys General Act claims.

10  If a Class Member submits a valid Claim Form, the Class Member will be

11  paid, and also will be deemed to have opted into and agreed to release the FLSA

12  claims that were transferred to the Eastern District of Pennsylvania, but will now be

13  added back to this action in the Third Amended Complaint.

14  Existing Class Members of the certified class will not have the ability to opt-

15  out of the settlement because they previously had an opportunity to opt out of the

16  class, but did not.

17  The "Interim Class Members" (those added since the initial certification of the

18  class) will have 60 days to opt-out, if they choose to do so.

19  If 5% or more of the total number of Class Members submits timely and valid

20  Opt-Out Requests, then Defendants shall have the option to void the Settlement.

21

**IV.   Legal Argument**

22

    **A.      Steps in the Settlement Approval Process**

23

A class action may be settled subject to court approval. Fed. R. Civ. Proc.

24  23(e).  A class may be certified for settlement purposes only, and such "settlement-

25  only" classes are common. *Amchem Prods. v. Windsor*, 521 U.S. 591, 618 (1997). In

26  certifying a class for settlement purposes only, a court must ensure that the

27  requirements of Rule 23 are met, though the court need not determine whether the

28

case, if tried, would present intractable management problems. *Radosti v. Envision Emi, LLC*, 717 F. Supp. 2d 37 (D.D.C. 2010) referencing *Amchem Prods.* at 620.

Typically, the approval of a settlement is done in a two-step processes in which the "Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). Preliminary approval is appropriate where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval. *In re Tableware Antitrust Litig.,* 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007). The Court's taks is to balance a number of factors, including "the risk, expense, complexity, and likely duration of further litigation, " " the extent of discovery completed and the stage of the proceedings," and "the amount offered in settlement." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998). This safeguards the class members' rights to due process and allows the court to perform its duty as guardian of the class. *See* 4 Alba Conte and Herbert B. Newberg, *Newberg on Class Actions ("Newberg"),* §11.22 (4[th] ed. 2002) The approval or rejection of the proposed settlement is committed to the Court's sound discretion. *See Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992) As part of a settlement, the Court may provisionally certify a class for settlement purposes, if the requirements for certification are met. The "court then approves the form and manner of notice and sets a final fairness hearing, where it will make a final determination on the fairness of the class settlement." *In re Wireless Facilities, Inc.*, 253 F.R.D. 630, 634 (S.D. Cal. 2008).

After a hearing and an opportunity for Class Members to object, the Court may approve the settlement if it finds that it is fair, reasonable, and adequate. Fed. R. Civ. Proc. 23(e).

1    Here, a class has already been certified that includes most of the members of

2    the proposed settlement class.  All these individuals, as well as the Interim Class

3    Members, are Enrollment Counselors for Defendants who worked as hourly

4    employees.  As such, the issues of numerosity, commonality, typicality, and

5    adequacy are easily met.[2]

6    In particular, there are over 1,600 Class Members.  All these individuals

7    worked as Enrollment Counselors and were paid on an hourly basis.  All the

8    employees reported their hours into the same payroll system and used the same

9    telephone system.  Ms. Adoma and Ms. Abbaszadeh were typical in that they also

10   worked as Enrollment Counselors for Defendants.  Ms. Abbaszadeh received tuition

11   benefits and did not have these benefits included in computing her regular rate of pay

12   on which overtime was worked.  (See Order, Document #83, Filed 08/31/10 in which

13   these issues were addressed).

14   **B.      Fairness of Settlement**

15   At the preliminary approval stage, the issue is whether the proposed settlement

16   is within range of reason, as the Court will make a final determination on adequacy

17   and fairness at the final approval hearing.  *See Acosta v. Trans Union LLC,* 243

18   F.R.D. 377, 386 (C.D. Cal. 2007); 4 *Newberg* §11.25.  Preliminary approval should

19   be granted unless there are reasons to doubt the fairness of the settlement or there are

20   other "obvious deficiencies" making it clear that the settlement would not survive a

21   final approval hearing.  *In re Prudential Securities, Inc.,* 163 F.R.D. 200, 209

22   (S.D.N.Y. 1995).  The factors to be considered are those used for final approval:  the

23   strength of the plaintiffs' case, the risk, expense, complexity and likely duration of

24   litigation, the risk of maintaining class action status through trial, the amount of the

25   settlement, the discovery completed, the stage of the proceedings, and the experience

26

27

28   [2] Defendants do not oppose this Motion, but they do not admit that certification is
appropriate except for settlement purposes only.

1  and views of counsel.  *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir.
2  1993).

3       There is a presumption of fairness, where the settlement is achieved through
4  arms-length bargaining, there has been sufficient investigation and discovery to
5  allow counsel and the court to act intelligently, counsel is experienced in similar
6  litigation, and the percentage of objectors is small. 4 *Newberg* §11.41.  Here, the
7  settlement was negotiated after a period of investigation and discovery by both sides
8  in an arm's length mediation with a highly regarded mediator.  Both sides had
9  sufficient information to make good decisions and counsel for plaintiffs is
10 experienced in this kind of litigation.

11           **1.    The settlement amount represents a realistic resolution given
               the strength of the claims, risk of loss, and the complexity of the**
12           **litigation.**

13      The primary claim of the Plaintiffs in this lawsuit is that they worked off-the-
14  clock and that records from the telephone system could be used to reconstruct their
15  hours worked.  Plaintiffs conducted extensive discovery into these allegations
16  including taking the depositions of three (3) company representatives, reviewing
17  thousands of email records, and reviewing phone records from approximately 58
18  Enrollment Counselors (1 in every 15 for which records were available).

19       With the analysis of tens of thousands of phone records and matching those
20  up with payroll records of hours worked, it is not surprising that Defendants' expert
21  analysis differed from Plaintiffs'.   Plaintiffs' off-the-clock analysis came up with a
22  range of damages of between $933,729 and $4,429,042 depending on factual
23  assumptions around the use of certain Auxiliary codes on the phone system. (Decl.
24  Tracy ¶5).

25      The parties also disagreed about potential damages on the regular rate of pay
26  issue, with Plaintiffs arriving at $722,917 in damages using the assumption that the
27  cost of the benefits was approximately $4,000 per employee.  Defendants contended
28

JOINT MOTION FOR CERTIFICATION OF SETTLEMENT CLASS

1 | that the cost was *de minimis* because  UOP did not incur any additional costs for any
2 | of the tuition benefits offered.

3 |       Ultimately, the conflicting evidence and presentation of evidence in this case
4 | would have resulted in a lengthy and expensive trial that would amount to a "battle
5 | of the experts."  The expert fees on both sides would likely exceed $100,000 (Decl.
6 | Tracy ¶6). In addition, a lengthy and complex jury trial would need to be conducted
7 | with each expert explaining details about telephone records and detailed overtime
8 | calculations.

9 |       Such a trial would pose risks to both sides and the parties agrees to settle the
10 | case for a total of $4,000,000 which represents a fair amount given that the upper end
11 | of Plaintiffs' estimates is $5,151,959.  While it is certainly possible that the Class
12 | Members could recover additional amounts in penalties if they could prove certain
13 | violations, given the complexity of the litigation, such penalties are speculative.  In
14 | addition, Defendants stated an intent to move for decertification of the class based on
15 | the decision in *Wal-Mart Stores, Inc. v. Dukes*, 564 S.Ct. __, 2011 WL 2437013
16 | (U.S.), which was issued after this Court's certification Order.  Plaintiffs contend that
17 | the *Dukes* decision is distinguishable and does not affect the propriety of
18 | certification, but the risk of decertification is another factor that supports the fairness
19 | of the settlement.  The risk of future litigation over decertification and liability issues
20 | would also be high regarding a meal break claim given that the California Supreme
21 | Court has just recently held that an employer need only provide employees breaks
22 | but need not ensure that no work is performed.  *Brinker Restaurant Corp. v. Superior*
23 | *Court*, No. D049331 (April 12, 2012).  As such, the $4,000,000 amount represents a
24 | fair amount that is well within the range of reason for this case.

25

26

27

28

JOINT MOTION FOR CERTIFICATION OF SETTLEMENT CLASS

**2. The use of a "claims made" provision in the Settlement is fair given the nature of the Fair Labor Standards Act opt-in requirement.**

Although the final fairness to the entire settlement is typically analyzed at a "final fairness" hearing, the issue of the opt-in requirement will be addressed here to assure the Court that is a fair result in compliance with the law. First, it should be noted that a purely opt-out mechanism for the class would be contrary to the provisions of the Fair Labor Standards Act. *Kakani v. Oracle Corp.*, 2007 U.S. Dist. LEXIS 47515 (N.D. Cal. June 19, 2007). Some courts have held that the FLSA requires an affirmative opt-in to waive any rights or receive any benefits from an FLSA lawsuit. *Wright v. Linkus Enters.*, 2009 U.S. Dist. LEXIS 50881 (E.D. Cal. June 16, 2009).

Significantly, there is a guarantee of a 50% floor as to the settlement sums that will be paid. Using this "floor" on the payout amount ensures fairness for both the Class Members and Defendants. Given Defendants' position that some Enrollment Counselors reported all of their time and were provided with required breaks, which, if true, would mean that they do not have off-the-clock or break claims, it is appropriate that only Class Members who submit claims will be paid in the Settlement. Courts have approved claims-made settlements with a 50% floor as sufficiently fair for final approval. *See*, *e.g.*, *Gardner v. GC Services, LP*, 2012 WL 1119534, *2 (S.D. Cal. April 2, 2012).

## V.   CONCLUSION

After extensive litigation in both California and Pennsylvania courts, the parties have resolved this case and seek approval of this Court for a class action settlement. The settlement was reached after arms-length mediation and extensive discovery and law and motion. The settlement amount of $4,000,000 represents a reasonable compromise within the range of realistic possibilities for this lawsuit. As such, Plaintiffs and Class Members respectfully request that this settlement be preliminarily approved subject to final approval after the claims period has passed.

1
2
3
4

DATED:  April 16, 2012          LAW OFFICES OF MICHAEL TRACY
                                        /s/ Michael Tracy
                                By_____
                                MICHAEL TRACY, Class Counsel

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOINT MOTION FOR CERTIFICATION OF SETTLEMENT CLASS