MICHAEL L. TRACY, ESQ., SBN 237779
MTRACY@MICHAELTRACYLAW.COM
LAW OFFICES OF MICHAEL TRACY
2030 Main Street, Suite 1300
Irvine, CA  92614
T: (949) 260-9171
F: (866) 365-3051

Attorneys for Plaintiff DIANE ADOMA

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| DIANE ADOMA, *et al.* | Case No.:  2:10-cv-00059-LKK-GGH |
| Plaintiff, | **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF THE SETTLEMENT CLASS** |
| vs. | |
| THE UNIVERSITY OF PHOENIX, INC., *et al.*, | Hearing Date: November 5, 2012<br>Time:  10:00a.m.<br>Ctrm: 4<br>Judge: Hon. Lawrence K. Karlton |
| Defendants. | Date Filed: January 8, 2010<br>Trial Date: June 12, 2012 |

-1-
MOTION FOR FINAL APPROVAL

**TO DEFENDANT THE UNIVERSITY OF PHOENIX, INC. AND DEFENDANT APOLLO GROUP, INC. AND THEIR ATTORNEY OF RECORD:**

PLEASE TAKE NOTICE that on November 5, 2012 at 10:00a.m., or as soon thereafter as counsel may be heard in Department 4 of the above-entitled Court, Plaintiffs DIANE ADOMA and MICHELLE ABBASZADEH and Defendants THE UNIVERSITY OF PHOENIX, INC. and APOLLO GROUP, INC. will and hereby do move this Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), for final approval of the settlement.

This motion is based upon this Notice of Motion, the accompanying Motion, the accompanying Memorandum of Points and Authorities, the papers and records on file with this Court, and other such oral and documentary evidence as may be presented to the Court at or prior to the hearing on the Motion.

DATED:  October 9, 2012          LAW OFFICES OF MICHAEL TRACY
                                           /s/ Michael Tracy
                                  By_____
                                  MICHAEL TRACY, Class Counsel

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Table of Contents

I.   INTRODUCTION ...................................................................................... 1

II.  Procedural and Factual Background ....................................................... 1

   A. Parties ................................................................................................. 1

   B. Essential Factual Allegations and Denials ....................................... 1

   C. Prior law and motion ......................................................................... 2

   D. Extent and Scope of Discovery .......................................................... 5

   E. Mediation and Settlement .................................................................. 6

III. SUMMARY OF SETTLEMENT TERMS ................................................ 6

   A. Class Definitions ................................................................................ 6

   B. Essential Terms .................................................................................. 7

IV. Legal Argument ........................................................................................ 7

   A. Strength of Plaintiffs' Case .............................................................. 8

   B. The risk and complexity of this case favor settlement ................... 10

   C. The experience and view of counsel weigh in favor of settlement. ............. 10

   D. The Labor and Workforce Development Agency specifically chose not to investigate these claims and is still receiving $50,000 from the settlement. ..... 11

   E. The lack of objectors and opt-outs weighs in favor of settlements, and 44% of the funds available to the "opt-in" plaintiffs are being claimed. ................ 12

   F. The enhancements to the named Plaintiffs are reasonable given the time they committed to this lawsuit and the risks they undertook in this litigation. ...................................................................................................... 13

MOTION FOR FINAL APPROVAL

**G. The payment of 33% for attorney's fees is warranted given the complexity of the litigation, the results obtained, and to prevent money from reverting to the Defendants.**................................................................................**14**

**V.  CONCLUSION**..............................................................................**14**

1

2

## TABLE OF AUTHORITIES

3

**Page(s)**

4

**CASES**

5

*Boyd v. Bechtel Corp.*,
    485 F.Supp. 610 (C.D. Cal. 1979) .................................................................. 12

6

7

*Brinker Restaurant Corp. v. Superior Court*,
    53 Cal. 4th 1004 (2012) ............................................................................... 9

8

9

*Clark v. American Residential Services LLC*,
    175 Cal. App. 4th 785 (2009) ................................................................... 13

10

11

*Consumer Advocacy Group, Inc. v. Kintetsu Enterprises of America*,
    141 Cal. App. 4th 46 (2006) ...................................................................... 8

12

13

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. Ill. 1998) .......................................................... 13

14

*Dunk v. Ford Motor Co.*,
    48 Cal. App. 4th 1794 (1996) .................................................................... 8

15

16

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*,
    213 F.3d 454 (9th Cir. Nev. 2000) .......................................................... 13

17

*Ellis v. Edward D. Jones & Co., L.P.*,
    527 F. Supp. 2d 439 (W.D. Pa. 2007) .................................................... 12

18

19

*Harris v. Vector Mktg. Corp.*,
    2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr. 29, 2011).................... 8

20

21

*Hernandez v. Vitamin Shoppe Industries Inc.*,
    174 Cal. App. 4th 1441 (2009) ............................................................... 13

22

23

*In re Anthracite Coal Antitrust Litigation*,
    79 F.R.D. 707 (M.D. Pa. 1978) ............................................................... 12

24

25

*Kempf v. Barrett Bus. Servs., Inc.*,
    2007 U.S. Dist. LEXIS 86115 (N.D. Cal. July 31, 2007) ...................... 9

26

27

*Loretz v. Regal Stone, Ltd.*,
    2010 U.S. Dist. LEXIS 130307 (N.D. Cal. Nov. 23, 2010)................. 13

28

*Marshall v. Holiday Magic, Inc.*,
    550 F.2d 1173 (9th Cir. 1977) ........................................................................ 12

*Murillo v. Pac. Gas & Elec. Co.*,
    2010 U.S. Dist. LEXIS 73427 (E.D. Cal. July 20, 2010) ....................... 10, 11, 13

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................... 12

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. Cal. 2009) ..................................................................... 8

*Sabol v. The University of Phoenix*,
    No. CV 09-03439-JCJ (E.D. Pa.) ("*Sabol*") ............................................... 3, 4, 6

*Thiebes v. Wal-Mart Stores, Inc.*,
    2002 U.S. Dist. LEXIS 664 (D. Or. Jan. 9, 2002) ...................................... 12, 13

*Wang v. Chinese Daily News, Inc.*,
    236 F.R.D. 485 (C.D. Cal. 2006) ..................................................................... 12

STATUTES

29 U.S.C. § 216(b) ............................................................................................... 4

Cal. Lab. Code § 2699(l) .................................................................................... 11

Class Action Fairness Act, 28 U.S.C. § 1332(d) .................................................. 4

Labor Code § 203 ................................................................................................ 9

OTHER AUTHORITIES

Fed. R. Civ. P. 23(b)(1) ....................................................................................... 4

Fed. R. Civ. P. 23(b)(3) ....................................................................................... 4

Fed. R. Civ. Proc. 23(e) ....................................................................................... 7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs DIANE ADOMA and MICHELLE ABBASZADEH ("Plaintiffs") sued Defendants The University Of Phoenix, Inc. and Apollo Group, Inc. ("Defendants"), and now seek final approval on behalf of 1,725 Enrollment Counselors ("Enrollment Counselors" or "Class Members"). This Court granted preliminary approval of the settlement on June 19, 2012 (Document #137), and notice was mailed to the Class Members. There have been no opt-outs and no objections. In addition, class participation is approximately 44% of the available settlement amount. Given a considerable participation rate and the lack of any objectors or opt-outs, Class Members request that this settlement be approved.

## II.   Procedural and Factual Background

### A.   Parties

Defendant The University Of Phoenix, Inc. ("UOP") is a private, for profit educational institution that offers classes at 362 independent campuses throughout the United States, and through online programs. Defendant Apollo Group, Inc. ("Apollo") is the parent company of UOP and handles all of the administrative functions relating to payroll. UOP is a wholly owned subsidiary of Apollo.

Plaintiffs Diane Adoma and Michelle Abbaszadeh worked as Enrollment Counselors for Defendants in California. Ms. Adoma was employed by Defendants from September 2007 through November 2009. Ms. Abbaszadeh was employed by Defendants from September 2009 through March 2010.

### B.   Essential Factual Allegations and Denials

Plaintiffs claim that they worked as Enrollment Counselors for UOP and were required to work "off-the-clock." The Enrollment Counselors would assist prospective students of UOP with questions relating to enrollment in the university. Typically, this was done over the phone, but could also be done in person.

All the Enrollment Counselors were nonexempt employees who were paid for all the overtime that they reported into a time reporting system.  The time reporting system was a positive reporting system for overtime.  That is, employees did not punch in an out of a typical time clock, but rather could report any overtime hours worked into the time keeping system.  If the employee did not report anything in the time keeping system, the employee was paid for a 40 hour week.

Plaintiffs contend that they used a telephone system that recorded the time and date of all calls made and received, and that records of these phone calls could be used to establish their off-the-clock claims.  Plaintiffs also allege that the value of any tuition benefits received should have been included in the regular rate of pay on which overtime was worked.  Plaintiffs also contend that they were not permitted to take required meal breaks.

Defendants deny all of the allegations and contend that the Enrollment Counselors regularly reported and were paid overtime.  Defendants contend that all overtime was required to be recorded and paid for and cite the large amount of overtime that has paid to the Enrollment Counselors each and every pay period.  Defendants also deny that any additional compensation is due for tuition benefits and deny that meal breaks were not provided.

## C.   Prior law and motion

This case concerns alleged wage and hour violations by Defendants.  Plaintiff Diane Adoma filed the original complaint in this action on January 8, 2010, on behalf of herself and others similarly situated, with claims for unpaid overtime wages under both California law and the Fair Labor Standards Act ("FLSA"), together with claims for meal break, pay stub, and waiting time violations, as well as individual actions for retaliation and failure to produce records.

Ms. Adoma was not the first employee of Defendants to seek a judicial remedy for alleged overtime violations.  On April 3, 2009 plaintiff Dejan Juric filed a class and collective action complaint for unpaid overtime against UOP and Apollo in the

1   Superior Court for the State of California for the County of Los Angeles, which

2   Defendants removed to the Central District of California on May 7, 2009. *Juric v.*

3   *The University of Phoenix*, Inc., No. 09-CV-3214 ODW (C.D. Cal.)  ("*Juric*").

4   However, the parties in that action reached a settlement that pertained only to the

5   named plaintiff and Defendants, and the case was dismissed on June 21, 2010.  No

6   class or collective action was certified in that case.

7          A similar action for unpaid overtime was also filed against Defendants in the

8   state of Pennsylvania.  On July 30, 2009, plaintiffs Erik M. Sabol and Rebecca Odom

9   filed a complaint against Defendants in the Eastern District of Pennsylvania, on

10  behalf of all academic and Enrollment Counselors employed by Defendants.  *Sabol*

11  *v. The University of Phoenix*, No. CV 09-03439-JCJ (E.D. Pa.) ("*Sabol*").  The

12  Pennsylvania action includes overtime claims against Defendants under the FLSA.

13         In light of the claims brought in the *Sabol* and *Juric* cases, Defendants filed a

14  motion on March 4, 2010 to dismiss the present action under the first-to-file rule, or

15  in the alternative to stay and/or transfer the claim.  As a tentative settlement

16  agreement had been reached in *Juric* prior to this Court ruling on Defendants'

17  motion, the Court's analysis was primarily concerned with the competing claims

18  filed in Pennsylvania by plaintiffs in *Sabol*.

19         On May 3, 2010, this Court denied Defendants' motion to dismiss the present

20  action under the first-to-file rule, or in the alternative to stay and/or transfer the

21  claim.  The Court noted that, at the time of the ruling, the *Sabol* case had not

22  advanced even to certification.  In addition, the Court reasoned that Ms. Adoma had

23  brought unique theories of recovery, and the relief she sought under California state

24  law required different calculations for overtime compensation.  Under the totality of

25  the circumstances, the Court found that the first-to-file rule should not be applied in

26  this case.

27         Ms. Adoma subsequently brought motions seeking to:

28

1           (1) Amend her complaint and add Michelle Abbaszadeh as a named

2           Plaintiff;

3           (2) Certify a collective action under section 16(b) of the FLSA, 29

4           U.S.C. § 216(b), with regard to Plaintiffs' FLSA claims; and

5           (3) Certify three classes under Fed. R. Civ. P. 23(b)(1) or (b)(3) with

6           regard to Plaintiffs' state law claims.

7   The Court responded to these motions on August 13, 2010 by:

8           (1) Granting Plaintiff leave to amend, and approving the First Amended

9           Complaint;

10          (2) Transferring Plaintiffs' FLSA claims to the Eastern District of

11          Pennsylvania, in light of *Sabol* and the first-to-file rule, and noting that a

12          nationwide collective action had since been certified in *Sabol*, and that

13          the claims in that case were broader than originally thought by this

14          Court; and

15          (3) Ordering Plaintiffs to show cause as to why subject matter

16          jurisdiction exists over the remaining claims in this suit, all of which

17          arise under state law.

18  After reviewing Plaintiffs' subsequent arguments regarding subject matter

19  jurisdiction, this Court ruled on August 31, 2010 that it has jurisdiction over

20  Plaintiffs' state law claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

21  The Court further granted Plaintiffs' motion for class certification pursuant to Fed. R.

22  Civ. P. 23(b)(3), approving the following four classes:

23      1.    All current or former Enrollment Counselors[1] who worked at least one

24          week in the State of California for either The University of Phoenix, Inc.

25  _____

26  [1] The term "Enrollment Counselors" includes employees with the job title of
    "enrollment counselor" as well as any other nonexempt employee who utilized the
27  Avaya phone system's Automatic Call Distribution system to receive calls relating to
    enrollment.
28

or Apollo Group, Inc. at any time between April 5, 2005 and August 13,
2010.(**"California Overtime Class"**) and (**"California Meal Break
Class"**) and;

2.   All current or former Enrollment Counselors who received at least one
paycheck statement for work performed in the State of California for
either The University of Phoenix, Inc. or Apollo Group, Inc. at any time
between April 5, 2008 and August 13, 2010. (**"California Paystub
Class"**) and;

3.   All current or former Enrollment Counselors who worked at least one
week in the State of California for either The University of Phoenix, Inc.
or Apollo Group, Inc. at any time between April 5, 2006 and August 13,
2010 whose employment ended at least once during that same time
period. This class includes current employees who worked during the
covered time period, ceased working, and then began employment
again. (**"California Waiting Time Class."**)

On October 29, 2010, Plaintiffs Adoma and Abbaszadeh filed their Second
Amended Complaint (removing their FLSA claims), on behalf of themselves and the
Classes identified above, which Defendants answered on November 12, 2010.

**D.     Extent and Scope of Discovery**

The parties conducted formal discovery.  Both Plaintiffs' depositions were
taken and Plaintiffs took the depositions three different company representatives.
Both parties propounded requests for production of documents.

Plaintiffs conducted extensive discovery into email and records of the
computer phone system.  Plaintiffs received the detailed computer records from the
phone system for 58 of class members and were able to build a database of this
information to get estimates of the times worked by the employees.  This information
was compared to the payroll records for those same employees in an attempt to show
"off-the-clock" work.

**E.    Mediation and Settlement**

On July 21, 2011, the parties engaged in mediation before Mark Rudy, a mediator experienced with wage and hour class actions.  (Decl. Tracy ¶2).  At the mediation, the parties made progress towards a framework for settlement but did not actually reach a settlement.

Shortly after the mediation, Mark Rudy made a "mediator's proposal" to resolve the case.  The parties accepted the general framework of the proposal with the details to be worked out, largely pending the resolution of the *Sabol* case.

The parties then came to a final agreement in February 2012 to resolve the case.

## III.    SUMMARY OF SETTLEMENT TERMS

The essential terms of the Settlement are summarized here:

### A.    Class Definitions

The class is defined as: (a) all current and former Enrollment Counselors in California who were previously sent a class notice in the above-captioned case, but who did not opt out of the class; (b) all Enrollment Counselors in California hired from August 13, 2010 to and including the Preliminary Approval Date ("Interim Class Members") who were not previously sent a class notice; (c) all Enrollment Counselors in California who originally opted into the action entitled *Sabol, et al., v. Apollo Group, Inc., et al.*, United States District Court, Eastern District of Pennsylvania, Civil Action No. 2:09-cv-03439-JCJ, ("*Sabol*") and who subsequently excluded themselves from the *Sabol* settlement; and (d) one individual (Angelica Michelle Lee) who has communicated to Class Counsel her intent to opt in to the Pennsylvania Action.  "Class" shall exclude all Enrollment Counselors in California who opted into *Sabol* but who did not exclude themselves from the *Sabol* settlement.

**B.   Essential Terms**

A maximum settlement in the amount of $4 million will be distributed on a claims-made, partial-reversionary basis.  This sum includes payments to the class, attorney's fees, service fees of $5,000 to each class representative, a $20,000 additional settlement payment to Ms. Adoma for her individual claims, Plaintiffs' reasonable litigation expenses, costs of administration, PAGA penalties, interest and taxes. The Defendants' corporate FICA and FUTA obligation shall be paid separately and in addition to the gross settlement amount.

The settlement amount will be distributed to Class members on a prorated basis based on the number of work weeks worked by each Class Member.  The formula is as follows:

$$\frac{Total\ Settlement\ Pool\ \$\$}{Total\ Weeks\ Worked\ by\ all\ Class\ Members} \times Weeks\ worked\ by\ Individual\ Class\ Member$$

In addition, because less than 50% of the Settlement Pool was not claimed by Class Members, the payments to Class Members who submitted claims will be increased proportionately so that 50% of the Settlement Pool will be paid out.

Pursuant to the Settlement Agreement, Defendants have agreed not to oppose a request for attorney's fees not to exceed 33 1/3% of the gross settlement, a payment to the class representatives Ms. Adoma and Ms. Abbaszadeh, each not to exceed $5,000 service payment, as well as reimbursement of reasonable litigation expenses not to exceed $25,000.  Moreover, the Settlement also includes a payment of $50,000 to the State of California for the Private Attorneys General Act claims.

## IV.   Legal Argument

This Court has already determined that class treatment of the issues was warranted in its Order granting preliminary approval of the class dated June 19, 2012.  The final settlement of the class requires approval of this Court after a hearing to determine the fairness of the settlement.  Fed. R. Civ. Proc. 23(e). The purpose of

1  the court's review is to "prevent fraud, collusion or unfairness to the class."

2  *Consumer Advocacy Group, Inc. v. Kintetsu Enterprises of America*, 141 Cal. App.

3  4th 46, 60 (2006) quoting *Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794, 1800

4  (1996).  The court must be satisfied that the settlement is "fair, adequate, and

5  reasonable." *Dunk* at 1801.

6         In determining the adequacy of the settlement, several factors are typically

7  analyzed including (1) the strength of plaintiffs' case, (2) the risk, expense,

8  complexity and likely duration of further litigation, (3) the risk of maintaining class

9  action status through trial, (4) the amount offered in settlement, (5) the extent of

10 discovery completed and the stage of the proceedings, (6) the experience and views

11 of counsel, (7) the presence of a governmental participant, and (8) the reaction of the

12 class members to the proposed settlement.  *Rodriguez v. West Publ'g Corp.*, 563 F.3d

13 948, 963 (9th Cir. Cal. 2009).  Ultimately, in determining whether the "settlement is

14 fair, reasonable, and adequate, the court must examine whether the interests of the

15 class are better served by the settlement than by further  litigation." *Manual for*

16 *Complex Litigation, Fourth* (Fed. Judicial Center 2004) *("Manual")* § 21.61.

17        **A.     Strength of Plaintiffs' Case**

18        In evaluating the strength of the Plaintiffs' case in the context of settlement,

19 courts will look at a classes "expected recovery" compared to the settlement amount.

20 *Harris v. Vector Mktg. Corp.*, 2011 U.S. Dist. LEXIS 48878, *29 (N.D. Cal. Apr. 29,

21 2011).  Here, the main claims are for (1) off-the-clock work, (2) missed meals, and

22 (3) regular rate of pay calculations due to the tuition benefits.

23        In terms of the off-the-clock allegations,  Plaintiffs obtained detailed telephone

24 log records for 58 employees which totaled tens of thousands to detailed entries for

25 various types of phone activity. With the analysis of these phone records and the

26 matching payroll records of hours worked, Plaintiffs' off-the-clock analysis came up

27 with a range of damages of between $933,729 and $4,429,042 depending on factual

28

1 | assumptions around the use of certain Auxiliary codes on the phone system. (Decl.

2 | Tracy ¶3).

3 |     In terms of the missed meal breaks, this issue is made extremely difficult given

4 | the California Supreme Court's ruling in *Brinker Restaurant Corp. v. Superior*

5 | *Court*, 53 Cal. 4th 1004, 1040 (2012).  Under this ruling, employers need only make

6 | a meal break available to employees – the fact that the employee may not actually

7 | take the break does not automatically create liability.  *Id*. Here, the phone records

8 | provided evidence of numerous missed meal breaks, but no evidence of why those

9 | meal breaks were missed.  There is no indication from the phone system records

10 | whether an employee chose to work through their meal break voluntarily or was

11 | required to do so by the company.  In addition, there were far more days when meals

12 | were by the employees. UOP also has a company policy that employees were

13 | permitted to take a meal break and were required to "punch out" on the phone system

14 | during this break so that incoming calls would not be routed to them while on break.

15 | As such, given the holding in *Brinker*, any damages for missed meals would be

16 | highly speculative.

17 |     In terms of the regular rate of pay, Plaintiffs calculated $722,917 in damages

18 | using the assumption that the cost of the benefits was approximately $4,000 per

19 | employee.  Defendants contended that the cost was *de minimis* because  UOP did not

20 | incur any additional costs for any of the tuition benefits offered.

21 |     A major component that was at issue was the "waiting time penalties" under

22 | Labor Code § 203.  These penalties are assessed if an employee is willfully not paid

23 | wages due upon their termination.  Cal. Lab Code § 203.  *Kempf v. Barrett Bus.*

24 | *Servs., Inc.*, 2007 U.S. Dist. LEXIS 86115, *23-24 (N.D. Cal. July 31, 2007).

25 | Plaintiffs estimated that there were $5,129,520 in potential penalties due.  However,

26 | proving that the violation was willful is far from a certainty.  UOP correctly points

27 | out that the Class Members were all routinely paid overtime.  Indeed, any employee

28 | who reported overtime into the payroll system was paid for that overtime. As such,

1   the Class Members needed to prove that they were actively discouraged from

2   reporting their overtime and also explain why some overtime was reported but other

3   overtime was not.

4        Using the above numbers, Class Members' best case scenario would amount to

5   $10,281,497.  Based on the conflicting evidence, the complexity of a jury trial, and

6   the difficultly in proving willfulness to receive that majority of the potential

7   damages, the $4,000,000 settlement represents a fair amount.  Indeed, it is

8   approximately 100% of all the potential unpaid overtime that Class Members would

9   possibly prove by using the phone records.

10       **B.**    **The risk and complexity of this case favor settlement**

11        As noted above, Plaintiffs' theory of the case requires them to prove that

12   although they could submit any overtime hours to the payroll system and be paid for

13   those hours, they failed to do so and were thus underpaid for overtime work.  The

14   phone records provide some basis for offering such proof, but it is far from a bullet

15   proof argument.  The phone records are detailed but obviously only show time that

16   an employee was on the phone.  UOP had their own expert analyze the phone

17   records, and not surprisingly, he came up with a very different analysis.

18        The purpose of this motion is not to determine the ultimate merits of the claim,

19   but the voluminous phone records would have been presented at trial by conflicting

20   expert opinions.  These experts would have cost is excess of $100,000 to perform the

21   evaluations, and presenting this information to a jury would obviously entail a great

22   deal of complexity.

23

24       **C.**    **The experience and view of counsel weigh in favor of settlement.**

25        "When approving class action settlements, the court must give considerable

26   weight to class counsel's opinions due to counsel's familiarity with the litigation and

27   its previous experience with class action lawsuits."  *Murillo v. Pac. Gas & Elec. Co.*,

28   2010 U.S. Dist. LEXIS 73427,*22 (E.D. Cal. July 20, 2010).  Here, Class Counsel

1 │ has litigated hundreds of wage and hour lawsuits and many class actions. (Decl.

2 │ Tracy ¶4).  Class Counsel is also experienced with payroll systems and computing

3 │ the regular rate of pay which greatly assisted with analyzing the large amount of data

4 │ presented in this case. (Decl. Tracy ¶5).

5 │         Class Counsel has handled several class actions which deal explicitly with the

6 │ issues of which additional payments need to be included in the regular rate of pay.

7 │ Specifically, the above mentioned cased of *Murillo v. Pac. Gas & Elec. Co.* is one in

8 │ which hourly employees did not have cash payments made to them in lieu of health

9 │ benefits.  That case involved complex issues of computing the regular rate of pay, as

10 │ well as which payments could be excluded from the overtime computation.

11 │         Based on the extensive experience of Class Counsel in litigating overtime

12 │ issues regarding the regular rate of pay and other technical issues with the pay due to

13 │ hourly employees, it is the view of Class Counsel that this settlement represents a fair

14 │ result for the class. (Decl. Tracy ¶6).

15 │         **D.      The Labor and Workforce Development Agency specifically chose not to**

16 │                 **investigate these claims and is still receiving $50,000 from the settlement.**

17 │         Plaintiffs, through their counsel, notified the Labor and Workforce

18 │ Development Agency (LWDA) of the alleged Labor Code violations.  The LWDA

19 │ informed Plaintiffs that it did not intend to investigate the allegations.  In addition,

20 │ the LWDA did not intervene in the action or otherwise cite UOP for any alleged

21 │ violations. (Decl. Tracy ¶7).

22 │         Given that the LWDA was not involved in the matter, it has no authority to

23 │ object to the settlement, and the California Legislature simply requires that a court

24 │ "shall review and approve any penalties sought as part of a proposed settlement

25 │ agreement."  Cal. Lab. Code § 2699(l).  Here, the allocation of $50,000 to Private

26 │ Attorney General Act penalties is typically in line with other settlements that Class

27 │ Counsel has been involved with. (Decl. Tracy ¶8).

28 │

**E.     The lack of objectors and opt-outs weighs in favor of settlements, and 44% of the funds available to the "opt-in" plaintiffs are being claimed.**

A total of 1,725 class notices were sent out. (Decl. Butler, ¶8).  A total of 548 valid claims were submitted. (Dec. Butler ¶10).  No objections and no opt-outs were received. (Decl. Butler ¶11-12).  The lack for opt-outs weighs further in favor of final approval.  See *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977) (fact that the "overwhelming majority" of the class did not opt out "presents at least some objective positive commentary as to its fairness"); *Wang v. Chinese Daily News, Inc.*, 236 F.R.D. 485, 488 (C.D. Cal. 2006) (1% opt-out rate is typical in employment actions).

As of the date of this motion, neither of the parties have been served with any Notice of Objection (either timely or untimely filed).  Nor were any objections provided to the Claims Administrator.  (Decl. Butler ¶12)  This absence of any objection weighs heavily in favor of final approval.  *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 624 (C.D. Cal. 1979) ("the Court finds persuasive the fact that eighty-four percent of the class has filed no opposition"); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,  221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members").  ( "extremely unusual not to encounter objections to proposed settlements"  *In re Anthracite Coal Antitrust Litigation*, 79 F.R.D. 707, 712-713 (M.D. Pa. 1978)).

The opt-in rate of 32% is typical of this type of class, and given that it covers 44% of the work weeks, it is actually on the high side.  See *Ellis v. Edward D. Jones & Co., L.P.*, 527 F. Supp. 2d 439, 444 (W.D. Pa. 2007) for opt-ins "between 15 and 30 percent" as typical. But see also, *Thiebes v. Wal-Mart Stores, Inc.*, 2002 U.S. Dist. LEXIS 664, *8 (D. Or. Jan. 9, 2002) for a 2.7% opt-in rate.

Because of the 50% floor that was negotiated as part of the settlement, this total amount will be adjusted upward so that the Class Members receive 50% of the funds available for payout.

**F.     The enhancements to the named Plaintiffs are reasonable given the time they committed to this lawsuit and the risks they undertook in this litigation.**

In general, courts will approve additional payments to the named plaintiffs of a class action to compensate them for the time and risk they undertook for participating in the lawsuit. *Cellphone Termination Fee Cases*, 186 Cal. App. 4th 1380, 1394 (2010).  In particular, a court should look at (1) the financial risk to the named plaintiffs, (2) the notoriety and personal difficulties encountered, (3) the amount of time and effort spent, (4) the duration of the litigation, and (5) the personal benefit enjoyed by the named plaintiffs. *Id*. See also *Clark v. American Residential Services LLC*, 175 Cal. App. 4th 785, 804 (2009) and *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. Ill. 1998) for similar factors.

Here, Plaintiffs Adoma and Abbaszadeh seek $5,000 enhancements. Such enhancements are generally in line with others awarded.  See *Loretz v. Regal Stone, Ltd.*, 2010 U.S. Dist. LEXIS 130307 (N.D. Cal. Nov. 23, 2010) approving $7,500 per named plaintiff. See also *Murillo v. Pac. Gas & Elec. Co.*, 2010 U.S. Dist. LEXIS 73427, *33 (E.D. Cal. July 20, 2010) approving a $10,000 enhancement for a single plaintiff in a wage and hour case.  *See Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 457 (9th Cir. Nev. 2000) approving $5,000 incentive award to each Plaintiff in a $1.725 million settlement.

The named Plaintiffs would have also been responsible for Defendant's costs should they not have prevailed in this lawsuit while unnamed class members would not have been. *Hernandez v. Vitamin Shoppe Industries Inc.*, 174 Cal. App. 4th 1441, 1460 (2009).  As such, Plaintiffs were the ones who actually put themselves at risk.

1  For a class action of this complexity, the litigation costs could easily have exceeded

2  $50,000 had the case run its full course.  (Decl. Tracy ¶9).

3      In addition, Plaintiffs both had their depositions taken and spent several hours

4  reviewing issues with Class Counsel.  (Decl. Tracy ¶10).  Ms. Adoma is also

5  receiving a $20,000 settlement payment to resolve her retaliation claim.  This

6  settlement amount is in line with Class Counsel's experience in dealing with similar

7  retaliation claims and was the subject of arm's length negotiations.

8  **G.    The payment of 33% for attorney's fees is warranted given the**

9  **complexity of the litigation, the results obtained, and to prevent money**

10 **from reverting to the Defendants.**

11     As noted in the motion for attorney's fees, this case involved several complex

12 issues and the separate motion for attorney's fees covers the various factors that

13 support an award of 33%.  In addition, it should be noted that because class members

14 are being adjusted upwards to have their claims total 50% of the settlement fund, any

15 amount lower than 33% of for the attorney's fees will result in 50% of that money

16 being retained by Defendants.  As such, and for the various reasons put forth in the

17 separate motion for attorney's fees, the Class Counsel requests that 33 1/3% be

18 awarded in attorney's fees.

19

20 **V.    CONCLUSION**

21     After extensive litigation in both California and Pennsylvania courts, the

22 parties have resolved this case and seek approval of this Court for a class action

23 settlement.  The settlement was reached after arms-length mediation and extensive

24 discovery and law and motion.  The settlement amount of $4,000,000 represents a

25 reasonable compromise within the range of realistic possibilities for this lawsuit.  As

26 such, Plaintiffs and Class Members respectfully request that this settlement be

27 granted final approval after the claims period has passed.

28

1

2
DATED:  October 9, 2012          LAW OFFICES OF MICHAEL TRACY
3                                              /s/ Michael Tracy
                                        By_____
4                                       MICHAEL TRACY, Class Counsel
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL